STATE of Indiana, Appellant (Defendant Below),

Greenwood Shopping Center, Inc. and Greenwood Realty Corporation, (Defendants Below),

Garden City Foods, Inc., (Third-Party Defendant Below),

v.

Willie INGRAM and John Henry Kirk, Appellees (Plaintiffs Below).

No. 3–476A82.

Court of Appeals of Indiana, Third District.

Jan. 30, 1980.

Rehearing Denied March 27, 1980.

Theodore L. Sendak, Atty. Gen., Walter F. Lockhart, Deputy Atty. Gen., Indianapolis, for appellant.

John J. Lorber, Crumpacker, May, Searer, Oberfell & Helling, South Bend, for appellees.

GARRARD, Presiding Judge.

This is a personal injury case tried by jury. The principal issue on appeal concerns the proper presentation to the jury of the matters contained in a loan receipt agreement entered into between the plaintiffs, Ingram and Kirk, and Greenwood Shopping Center and Greenwood Realty Corporation (hereafter collectively referred to as Greenwood).

Ingram and Kirk were injured when their automobile went off the drive and into a ditch as they were attempting to leave the Greenwood Shopping Center. Heavy rains had fallen during the day. At the time of the accident the ditch, driveway and a portion of the parking lot were under water so that the edge of the driveway was obscured.

Ingram and Kirk brought a negligence action against Greenwood and the state. Garden City Foods, Inc. was joined as a third party defendant. Shortly before trial the plaintiffs entered into a covenant not to sue Garden City and executed a loan receipt agreement with Greenwood. These actions were revealed to the court. Greenwood was dismissed as a defendant, and the state amended its answer to assert that the agreement with Greenwood and the payments made thereunder constituted a full satisfaction of plaintiff's claim. Ultimate-

ly, the jury returned a verdict against the state awarding Ingram ten thousand dollars ($10,000) and Kirk three thousand dollars ($3,000).

Near the conclusion of plaintiffs' case the court inquired, outside the presence of the jury, how the parties intended to handle the matters raised by the loan receipt agreement. The state moved to examine the plaintiffs' attorney and made an offer of proof when the motion was denied. When the jury was recalled the state called Ingram and Kirk as adverse witnesses and elicited from them that the claim against Greenwood had been dropped for $3,500 and that under the agreement they would retain this amount regardless of the jury's verdict. Plaintiffs' attorney was then permitted in rebuttal and over objection to introduce the entire agreement in evidence. No instruction was requested or given concerning the effect of the loan agreement. The agreement contained eleven prefatory paragraphs and was couched in language clearly intended to maximize the seriousness of plaintiffs' injuries and the culpability of the State of Indiana. It provided that no repayment was to be made unless a verdict for more than six thousand dollars ($6,000) was rendered against the state and in any event repayment was limited to $1,500.

At the outset we point out that at the time this case was tried little guidance existed in our opinions concerning how loan receipt agreements should be handled at trial. Moreover, in view of the approach taken by the parties we can understand why the court ruled as it did. We are persuaded, however, that it was error to handle the receipt in this fashion and that there was such likelihood that the error infected the proceedings that a new trial should be granted.

At this point Indiana has clearly approved of the loan receipt as an acceptable settlement device that serves a valid purpose in placing immediate funds in the hands of an injured party or his family. *American Transport Co. v. Central Indiana Ry. Co.* (1970), 255 Ind. 319, 264 N.E.2d 64;

*NIPSCO v. Otis* (1969), 145 Ind.App. 159, 250 N.E.2d 378.

It has also been readily recognized that this device involves disadvantages, which are typically felt most keenly by the non-agreeing defendants, but may also affect the plaintiff. The chief criticism levied at this type of settlement device is that it alters the traditional relationship between plaintiff and defendant[1] and between co-defendants.[2] Whether a non-agreeing defendant is actually prejudiced because a co-defendant and the plaintiff have settled depends largely on the nature of the agreement, whether its existence is kept secret and whether the agreeing defendant remains as a party in the litigation.[3]

A portion of the problem was anticipated by the court in *Burkett v. Crulo Trucking Co.* (1976), Ind.App., 355 N.E.2d 253, 260–1, where Judge Robertson stated,

"Assuming that an agreement is admissible to show a contractual relationship with reference to the interest of a witness or party in the litigation and any financial considerations that might influence the witness or party, *Pickett v. Kolb* (1968), 250 Ind. 449, 237 N.E.2d 105, a

non-participating co-defendant may yet have a grave decision to make. As in the case at bar, the loan receipt agreement may be drafted with admissions and accusations so damning to the non-participating co-defendant that the co-defendant is placed in a dilemma. He must choose to suffer in silence damaging conduct at trial by the co-defendant participating in the agreement, or he must choose to explain that conduct to the trier of facts by offering into evidence the agreement with its statements calculated to frame the offering party in the worst possible light."

On the other hand, the plaintiff's dilemma most typically arises over revelation of the amount paid. As the court pointed out in *Degen v. Bayman* (1972), 86 S.D. 598, 200 N.W.2d 134, if the settlement amount is small the non-agreeing defendant will attempt to use it to downgrade the amount of plaintiff's damages. If the amount is substantial, it will be contended that it constitutes satisfaction, or that it was the agreeing defendant who was the culpable party.

We have already determined that where the agreeing defendant appears as a wit-

1. One of the strongest criticisms is contained in *Lum v. Stinnett* (1971), 87 Nev. 402, 488 P.2d 347 where as part of the agreement the plaintiff promised not to settle with the other defendant and promised to try to encourage the jury to return a verdict in excess of the settlement amount. *See also* McKay, Loan Agreement: A Settlement Device that Deserves Close Scrutiny, 10 Val.L.Rev. 231 (1976); The Mary Carter Agreement—Solving the Problem of Collusive Settlements in Joint Tort Actions, 47 S.Cal.L. Rev. 1393 (1974). Most other jurisdictions considering loan receipt agreement have either distinguished the facts in *Lum* or disagreed with its conclusions. 65 A.L.R.3d 602, ff. Thus, Arizona has pointed out that nothing requires a defendant to conduct his defense in a particular fashion (*City of Tucson v. Gallagher* (1972), 108 Ariz. 140, 493 P.2d 1197, 65 A.L.R.3d 597) nor prevents defense of one's own interests by settlement (*City of Glendale v. Bradshaw* (1972), 16 Ariz.App. 348, 493 P.2d 515).

2. The charge that the agreement alters the relationship between two or more defendants was minimized in *City of Bloomington v. Holt* (1977), Ind.App., 361 N.E.2d 1211, by the court's observation that co-defendants typically attempt to blame each other regardless of the

existence of a settlement. *See also Reese v. Chicago, B. & Q. R. R. Co.* (1973), 55 Ill.2d 356, 303 N.E.2d 382. While this may be true for a defendant who can blame a co-defendant without jeopardizing his own defense, the likelihood of actual cooperation with a plaintiff may not arise until a defendant has effectively limited his own liability. Moreover, the relationship of the parties in the trial may be more subtly effected than by each defendant attempting to minimize his conduct by pointing an accusing finger at a co-defendant. For example, where a plaintiff has a cooperating defendant in a trial, the plaintiff's task may be aided by having the cooperating defendant call certain witnesses so that the plaintiff may treat their evidence on cross examination.

3. We note that considerable variations may exist even within the loan receipt framework. For example, in *NIPSCO v. Otis, supra*, the agreeing defendant could be exposed to additional liability by a jury verdict against it alone for more than the loan amount, whereas in the present case not only was Greenwood's liability fixed, a portion of its payment was not repayable in any event.

ness, the non-agreeing defendant is entitled to establish the nature of the loan receipt arrangement as bearing upon credibility. *State v. Thompson* (1979), Ind.App., 385 N.E.2d 198.

We now consider the propriety of introducing the agreement where it contains hearsay assertions and conclusions calculated to prejudice the non-agreeing defendant. Because of the context in which the question arises, we must also consider the propriety of advising the jury of the loan amount as constituting either total or partial satisfaction of the plaintiff's claim.

*Wecker v. Kilmer* (1973), 260 Ind. 198, 294 N.E.2d 132 recognized that where a plaintiff settles with a defendant, the result may be the complete satisfaction of plaintiff's claim on either of two bases: (a) if the parties *intended* the instrument they executed to be a full satisfaction; or (b) if the injured party was in fact paid full compensation for his injuries. Recent cases have declared that whether satisfaction was *intended* is normally to be determined from the language employed by the parties and thus may be determined by the court as a matter of law. *See Bellew v. Byers* (1979), Ind., 396 N.E.2d 335; *Cooper v. Robert Hall Clothes, Inc.* (1979), Ind., 390 N.E.2d 155. This was the approach utilized by the Supreme Court in *American Transport Co. v. Central Indiana Ry. Co.* (1970), 255 Ind. 319, 264 N.E.2d 64 where the court had before it a loan receipt agreement and covenant not to execute entered into between the plaintiff and one defendant while the case was on appeal following a jury verdict for $132,000 against both defendants. Addressing the claim that $85,000 paid by the agreeing defendant constituted a *pro tanto* satisfaction, the Court reversed the trial court's ruling to that effect, stating that, "[t]he terms of the agreement . . . clearly indicate that [the parties] understood the law of loan agreements . . . and had every intention of coming within the purview of that law." 264 N.E.2d 67. *Compare Bedwell v. DeBolt* (1943), 221 Ind. 600, 50 N.E.2d 875.

The agreement before us demonstrates. the same intent to apply the law of loan receipt agreements. On the basis of *American Transport Co.* it was improper to submit to the jury the question of whether total satisfaction was *intended.*

It does appear from the terms of the agreement that the sum of two thousand dollars ($2,000) which was unrepayable to Greenwood in any event might constitute a partial satisfaction of any judgment in favor of the plaintiffs. However, because of the likelihood that the jury might be prejudiced or misled concerning the significance of such payment and the ease with which such risks might be eliminated, we hold that the proper procedure for the court to follow in such circumstances is to withhold from the jury issues of partial satisfaction in fact. The amount and circumstances of any such payment may be disclosed to the court and, if appropriate, the sum may then be credited against payment of any verdict ultimately entered.[4]

Finally, we hold it was erroneous to admit in evidence the loan receipt agreement where it contained assertions and conclusions concerning the amount of damages sustained and the liability of the non-agreeing defendants. *See Dias v. Daisy-Heddon* (1979), Ind.App., 390 N.E.2d 222. There is no way to gauge the impact of such matters upon the jury. They clearly represent an extraneous and potentially prejudicial circumstance; one which is, at best, unproductive towards securing a fair trial and just result on the merits.

We therefore reverse and remand for a new trial.

HOFFMAN, J., concurs and files separate opinion.

STATON, J., dissents and files separate opinion.

HOFFMAN, Judge, concurring.

I concur in the result since I believe that it was reversible error to allow the loan

---

4. The issue of whether the satisfaction in fact is partial or total is thus resolved by simply ap-

plying the amount of the credit against the amount found due.

receipt agreement containing assertions and conclusions not necessarily pertinent to the loan agreement into evidence. I would not find it reversible error if the loan agreement was allowed into evidence with the objectionable part removed.

STATON, Judge, dissenting.

I dissent. It was the State who placed in issue the question whether the loan receipt agreement constituted full satisfaction for Ingram and Kirk's injuries. It was the State who introduced into evidence the monetary sum ($3,500) which Ingram and Kirk had received pursuant to the loan receipt agreement. Consequently, I would hold that the State cannot now complain of the admission of the loan receipt agreement, which Ingram and Kirk offered in *rebuttal* to the testimony regarding the payment they received under the agreement. Although the trial court erred when it failed to delete objectionable portions of the agreement, that evidence was merely cumulative in nature. Hence, the trial court's failure—which forms the only basis for the reversal granted by the Majority of this Court—constituted harmless error.

As the Majority has noted, we enjoy here the wisdom of hindsight; at the time the trial court acted on the question before us, the law of loan receipt agreements remained largely unsettled. It was only recently that the question of the admissibility of loan receipt agreements was addressed by our Supreme Court. In *Health and Hospital Corp. of Marion County et al. v. Gaither* (1979), Ind., 397 N.E.2d 589, the Court held that the details of a loan receipt agreement are admissible only when the co-defendant who has executed the loan receipt agreement remains a party to the litigation.[1] Otherwise, the existence and details of the agreement are not admissible. As the Court explained in *Gaither*:

"The only purpose behind putting the agreement in evidence would be to inform the jury that plaintiff had already received satisfaction for his injury. This would be unjust. That information would have an effect upon the jury similar to informing a jury of a defendant's liability insurance coverage, which is not permissible in this state. *Pickett v. Kolb* (1968), 250 Ind. 449, 237 N.E.2d 105; *Martin v. Lilly* (1919), 188 Ind. 139, 121 N.E. 443. . . ."

The unjust "effect" upon which the Court based its ruling that evidence of a loan receipt agreement is inadmissible is the inherent potentiality that a jury would adjust its assessment of damages once it was informed of the plaintiff's acquisition of loan receipt monies; in short, the plaintiff would be penalized for entering into the loan receipt agreement. This result would clearly emasculate our Supreme Court's approval of the use of loan receipt agreements. *See American Transport Co. v. Central Indiana Ry. Co.* (1970), 255 Ind. 319, 264 N.E.2d 64. Consequently, evidence of the existence and details of a loan receipt agreement, as is the case with a defendant's liability insurance, are considered prejudicial, irrelevant, and inadmissible.

Here, the State called plaintiffs Ingram and Kirk to the witness stand and elicited

[1]. In that instance, the admission of the agreement serves to inform the jury of the conflict of interest which surrounds the co-defendant to the agreement. At trial, the co-defendant to the agreement would, under the terms of most loan receipt agreements, be interested in maximizing the liability of the non-participating co-defendant; the admission of the agreement thereby insures that the non-participating defendant enjoys his right to a fair trial. *Id. See also, Burkett v. Crulo Trucking Company* (1976), Ind.App., 355 N.E.2d 253.

I note that in the instant case, Ernest F. Greenwood of the Greenwood Realty Corporation did testify at trial, notwithstanding the fact that the corporation was dismissed as a defendant once it had entered into the loan receipt agreement with Ingram and Kirk. If *Gaither* is construed to authorize the admission of a loan receipt agreement for impeachment purposes, then the State's interjection of the monetary details of the agreement was not prejudicial in nature. Of course, if *Gaither* is to be so interpreted, Ingram and Kirk were still entitled to introduce the remainder of the loan receipt agreement in rebuttal. Therefore, my analysis of the events which occurred at trial would remain unchanged regardless of the interpretation which might be placed on the language contained in *Gaither*.

from them the monetary details of the loan receipt agreement which they had executed with defendant Greenwood Realty Corporation. These irrelevant and highly prejudicial details were revealed to the jury in the following individual colloquies:

1) WITNESS INGRAM

"Q. Mr. Ingram, do you recall on the date of November 4, '75, which would have been the day before we started the trial here, do you recall entering into an agreement with yourself and Mr. Kirk and Greenwood Realty Company and Greenwood Shopping Center?

"A. Relating to what, sir?

"Q. Relating, sir, to a payment to you of $3,500 from the Greenwood Realty Corporation and the Greenwood Shopping Center, Inc.?

"A. Yes, I do.

\* \* \* \* \* \*

"Q. Now, Mr. Ingram, do you know, from your discussions with your attorney concerning this agreement, that you were to receive $3,500, you and Mr. Kirk together would receive $3,500 upon the execution of this agreement?

"A. Yes, I did.

"Q. And is it not true, Mr. Ingram, that under the terms of that agreement that, if this jury came back with a verdict of less than $6,000, you would not have to repay any of that $3,500?

"A. Yes."

2) WITNESS KIRK

"Q. Mr. Kirk, did you also on or about November 4, 1975, execute an agreement together with Mr. Ingram and the Greenwood Realty Company and the Greenwood Shopping Center, Inc., providing for a payment of $3,500 to you?

"A. I really can't—

"Q. Would it refresh your recollection if I showed you the document?

"A. Probably would.

(Mr. Byal exhibited a document to Mr. Kirk.)

"A. I signed that document there.

"Q. That's the document that I just described to you that we have been talking about.

"A. I signed that, yes.

\* \* \* \* \* \*

"Q. Do you understand that under the terms of that agreement that, if the jury returns to you a verdict of under $6,000, that you may keep the $3,500 paid to you under this agreement?

"A. I think maybe that's the way it was. I don't know if I fully understood it or not."

Following the State's introduction of this evidence regarding the existence and monetary details of the loan receipt agreement, plaintiffs' attorney recalled witness Ingram to the stand for rebuttal purposes. To attempt to explain the nature of the loan receipt agreement which Ingram and Kirk had executed with Greenwood, plaintiffs' attorney sought to introduce the loan receipt agreement into evidence. Over the State's objection, the court admitted the agreement into evidence. Judge Garrard holds that the trial court erred in admitting the agreement.

I disagree with Judge Garrard. It is well settled that otherwise inadmissible evidence may, *in the discretion of the trial court*, be admitted to explain or rebut prejudicial evidence which has been introduced by the opposing party. *Jackson v. Beard* (1970), 146 Ind.App. 382, 255 N.E.2d 837, 846; *Bandy v. Myers* (1967), 141 Ind.App. 220, 227 N.E.2d 183, 186; *Lyon v. Aetna Life Ins. Co.* (1942), 112 Ind.App. 573, 44 N.E.2d 186, 191. As the Court explained in *Jackson v. Beard*:

"'Accordingly, where evidence on a certain issue is introduced by one party, and it appears likely that the other party will be prejudiced unless he is permitted to introduce contradictory or explanatory

evidence, such evidence should be admitted. The admission of contradictory or explanatory rebuttal evidence that is otherwise inadmissible depends on the court's judgment of the prejudice that will result if such evidence is not permitted, . . . .' "

146 Ind.App. at 396, 255 N.E.2d at 846, quoting 12 I.L.E. Evidence § 54 p. 486 (1959). The rule enunciated in *Jackson* has been applied where one party has interjected only a portion of a document (*Lyon v. Aetna Life Ins. Co., supra*), a part of a transaction (*Becker v. Gibson* (1880), 70 Ind. 239), or a part of a conversation (*Bandy v. Myers, supra*.).

As the Supreme Court recognized in *Gaither*, the State's interjection of the monetary details of the loan receipt agreement executed by plaintiffs Ingram and Kirk and defendant Greenwood (who was dismissed from the litigation) could only serve to prejudice the jury against to plaintiff's claim of damages *vis-a-vis* the State. To minimize that prejudice, the only avenue available to Ingram and Kirk was to offer the loan receipt agreement into evidence. The trial court's admission of the agreement provided the jury with a *complete* understanding of the financial relationship between the plaintiffs and the dismissed defendant Greenwood.

I note that Judge Hoffman, in his concurring opinion, agrees that it was not error for the trial court to admit the agreement for the purpose of explaining the financial relationship between Ingram and Kirk and defendant Greenwood. Consequently, the only basis [2] for reversing the trial court in which a Majority of this Court concurs is the failure of the trial court to delete objectionable portions of the loan receipt agreement.

*The only error committed by the trial court—subsequent to the State's prejudicial interjection of the monetary details of the agreement—was its failure to remove the objectionable portions prior to its admission.* That language regarding the State's culpability and the extent of the plaintiff's injuries should not have been admitted into evidence. *The admission of that evidence, however, was clearly harmless error.*

It is a well-settled rule of appellate review that an erroneous admission of evidence will not warrant reversal unless it is shown that the complaining party was prejudiced by the objectionable evidence. *Marsh v. Lesh* (1975), 164 Ind.App. 67, 326 N.E.2d 626, 628. Consequently, when the evidence erroneously admitted is merely cumulative in nature, reversal is not warranted. *Hendrickson & Sons Motor Co. v. OSHA* (1975), 165 Ind.App. 185, 331 N.E.2d 743, 752; *Haskett v. Haskett* (1975), 164 Ind.App. 105, 327 N.E.2d 612.

Here, the jury was provided with extensive evidence concerning both the State's alleged culpability and the extent of the injuries sustained by Ingram and Kirk. That evidence which renders the error harmless is hereafter summarized.

Ingram and Kirk had alleged in their complaint that the State had negligently

---

**2.** I emphasize that the overly broad statement of the reason the trial court is here reversed has no support from either Judge Hoffman or myself. The particular language to which I refer is the following statement from the Majority Opinion:

"We are persuaded, however, that it was error to handle the loan receipt in this fashion and that there was such likelihood that the error infected the proceedings that a new trial should be granted."

The reason this statement finds no support from Judge Hoffman or myself is that (1) the State is the appellant here, and (2) the State interjected the prejudicial monetary details of the agreement, notwithstanding the fact that defendant Greenwood was dismissed from the

suit: *Compare, Health and Hospital Corp. of Marion County v. Gaither, supra*. Consequently, to permit the State to obtain a reversal of the adverse judgment would be to allow it to benefit from its own prejudicial interjection of the agreement's monetary aspects. Ingram and Kirk were entitled to offer the agreement into evidence to explain the relationship between themselves and Greenwood. Hence, I emphasize that the reversal granted here rests only on the trial court's failure to delete objectionable portions of the agreement. As explained in the text, I do not agree that the failure of the court to remove the objectionable portions can be characterized as reversible error.

maintained a drainage ditch which adjoined a state roadway in St. Joseph County. As a result of that improper maintenance, they alleged, the ditch was filled with water which overflowed and obscured the boundaries of a shopping center entryway. Ingram and Kirk had further alleged that the State's improper maintenance, as well as its negligent failure to erect warning signs or guardrails, was the proximate cause of the injuries they sustained when their automobile plunged off the entryway and into the ditch.

In support of these claims presented to the jury, the expert testimony of John McNamara, St. Joseph County Surveyor and Drainage Engineer, was admitted into evidence. McNamara testified at length regarding the engineering and design of the roadway, ditches, and surrounding areas. He testified that the State had knowledge of the recurring problem and that it had conducted an investigation into the causes of the problem. That investigation, McNamara stated, led to the conclusion that a drainpipe which the State had installed in 1950 was "covered up and clogged." McNamara further testified that if the State had unclogged the drainage pipe the accumulation of water at the scene would have been significantly diminished, but the State failed to clear the blocked pipe.

Plaintiffs Ingram and Kirk, as well as Police Officer Ernest Nybo, who investigated the accident, testified that the pavement surface at the scene of the crime was covered with water. Police Officer Donald Niezgodski, who also investigated the accident, testified that immediately following the investigation, he had Officer Nybo contact the State to "have them put some barricades over there so we wouldn't have another accident."

The evidence regarding Ingram and Kirk's injuries was extensive. Dr. Z. W. Sobol, an orthopedic surgeon, testified that Ingram sustained a sprain of the lumbosacral spine which necessitated that Ingram undergo five days of hospitalization in pelvic traction. He also testified that Ingram would endure chronic muscle spasms for perhaps two years as a result of his sprain and that Ingram, a construction worker, would be unable to lift weights above thirty pounds for the remainder of his life. In other words, Sobol testified, Ingram had sustained a seven and one-half per cent permanent impairment of his physical person. Sobol testified that Kirk also suffered an acute sprain of the lumbosacral and cervical areas of the spine, which would manifest itself for some time if Kirk engaged in strenuous activity. Both men required hospitalization and incurred medical expenses.

Based on this evidence, the objectionable portions of the loan receipt agreement can only be regarded as cumulative in nature. Consequently, the erroneous admission of them was clearly harmless error. Furthermore, I note that the jury was fully apprised of the inspiration behind the statements contained in the loan receipt agreement. The jury understood that plaintiffs Ingram and Kirk and Greenwood were the source of the objectionable statements. The State had fully informed the jury that the financial interests of both Ingram and Kirk, as well as Greenwood, were served by the agreement; the jury was fully aware that those parties would all benefit if liability was imposed upon the State and damages were ascertained in excess of $6,000. This evidence covers approximately three hundred and fifty pages of the transcript.

When the objectionable portions of the loan receipt agreement are placed in this harmless light, the need for a reversal and costly new trial appear pointless and unnecessary; therefore, I dissent.