Gary ERSKINE, Appellant (Plaintiff Below),

v.

DUKE'S GMC, INC., Appellee (Defendant Below).

No. 2–680A181.

Court of Appeals of Indiana, First District.

Dec. 10, 1980.

Rehearing Denied Jan. 16, 1981.

---

William F. McNagny, Gary J. Rickner, John F. Lyons, Barrett, Barrett & McNagny, Fort Wayne, for appellant.

Tom R. White, Christian, Waltz, White & Klotz, Noblesville, Emerson Boyd, Julia M. Blackwell, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

Plaintiff–appellant Gary Erskine (Erskine) appeals from a judgment in favor of Duke's GMC, Inc. (Duke's) in which Duke's was found not liable for injuries sustained by Erskine at the Anderson Country Club. Because we reverse and remand for a new trial, we only address the error surrounding the loan receipt agreement.

The operative facts relevant to our decision are not in dispute. Erskine was playing golf at the Anderson Country Club on the date the injury was sustained. Erskine was playing in front of a group that included Myron Paugh (Paugh).[1] Paugh's second shot to the green struck Erskine resulting in his becoming legally blind in one eye. Erskine entered into a loan receipt agreement with Paugh and Anderson Country Club, by which he was loaned the sum of $60,000. The agreement also contained a provision that the loan receipt agreement would not be used in any subsequent action against Duke's.[2] Duke's become involved in the action as a result of its relationship to Paugh.

At the time of Erskine's injury, Paugh owned fifty percent (50%) of the stock of the corporation and was its chief executive officer. In addition, Paugh was responsible for selling as much as seventy percent (70%) of the trucks sold by Duke's, which was the only franchised GMC truck dealer in Madison County.

Anderson Country Club and Paugh, as an individual, were removed as defendants, and the action proceeded against Duke's on the theory that Paugh was in fact golfing for the benefit of Duke's, which paid his dues to the country club and claimed the dues as a business deduction on its corporate income tax returns.

Duke's filed a request for admissions which requested Erskine to admit that:
1. The sum of $60,000 was delivered to plaintiff by or for Anderson Country Club and Myron Paugh.
2. Plaintiff's receipt of such sum arose out of the injuries and damages for which plaintiff sues.

Erskine's responses were:
1. Plaintiff would admit the sum of $60,000 was delivered to him for Anderson Country Club and Myron Paugh as a loan. He would deny their allegation that the sum was delivered to him.
2. The sum delivered to plaintiff as a loan was delivered to him under the

---

1. Nineteen times (19) Mr. Paugh was referred to as "Marvin" in appellee's brief, and nine (9) times he was correctly referred to as "Myron". We do not think it is too much to ask for counsel to at least know the proper name of the principal party to the litigation. Simple proof-reading would have caught this most obvious error and we highly recommend its future use.

2. We express no opinion as the validity of such a clause with respect to a third party who was not a party to the loan receipt agreement.

terms and conditions of a loan agreement, a copy of which has been furnished defendant's attorney. The loan agreement was related to the accident described in the complaint by the terms of said loan agreement.

Duke's later requested in a motion to the court that Duke's requests 1 and 2 be admitted by the plaintiff. The court granted this motion and therefore Duke's requests were deemed admitted, but the qualifying language used by Erskine in his response was struck. Duke's also filed a Motion in Limine seeking to preclude disclosure of the existence and terms of the loan agreement. Based on the trial court's interpretation of *State v. Thompson*, (1979) Ind.App., 385 N.E.2d 198 and *City of Bloomington v. Holt*, (1977) 172 Ind.App. 650, 361 N.E.2d 1211, it ruled that "the terms of the loan receipt agreement will be admissible through the witness by cross examination and not through the instrument on it."

During Duke's opening statement counsel declared:

this is not a case against the Anderson Country Club and this is not a case against Myron Paugh. It is uncontroverted in this case and the plaintiff has admitted in the pleadings these two (2) facts. The sum of Sixty Thousand Dollars ($60,000) was delivered to the plaintiff by or for the Anderson Country Club and Myron Paugh and the plaintiff's receipt of such sum arose out of the injury and damages for which plaintiff sues.

Counsel for Erskine objected to the statement on the grounds that the plaintiff had received no money to which he had any final claim and that the funds were only in the form of a loan. The court then ruled that the loan receipt would not be brought up again excepting by questions to the witnesses that were affected by the agreement.

Erskine later attempted to read into evidence a portion of Paugh's deposition to which Duke's objected unless the whole deposition was read into evidence. The court sustained the objection. Duke's then objected to the reading of the entire deposition since Paugh was in the courtroom.

Once again the objection was sustained. Erskine attempted to offer the deposition into evidence as an offer to prove which was likewise rejected by the court. The court later sustained an objection by Duke's to Erskine's answering a question directed at the circumstances and arrangements under which he received payment. The jury was then dismissed and the loan receipt agreement was identified and explained. It was offered into evidence and refused. Erskine also made an offer to prove the circumstances of the loan agreement by the reading of a portion of Paugh's deposition. This was denied by the court. The court also denied Erskine's offer to recall Paugh to the stand and have him testify as to the same matters contained in the deposition.

We opine the trial court erred when it failed to allow Erskine the opportunity to explain the circumstances under which the $60,000 was received by him, and that such failure resulted in prejudice to Erskine.

The nature and use of the loan receipt device is well known in this state and we see no need to discuss it further. *See Burkett v. Crulo Trucking Co.*, (1976) 171 Ind. App. 166, 355 N.E.2d 253; *Northern Indiana Public Service Co. v. Otis*, (1969) 145 Ind.App. 159, 250 N.E.2d 378; *State v. Thompson, supra*. Recently, our supreme court, in discussing a *defendant's* attempt to introduce a loan receipt agreement declared:

The only purpose behind putting the agreement in evidence would be to inform the jury that plaintiff had already received satisfaction for his injury. This would be unjust. That information would have an effect upon the jury similar to informing a jury of a defendant's liability insurance coverage, which is not permissible in this state. [Citations omitted].

*Health & Hospital Corp. v. Gaither*, (1979) Ind., 397 N.E.2d 589, 594.

Our review of the cases in this area reveals that although general uniformity of reasoning exists in cases in which the defendant attempts to introduce the loan receipt agreement, when a co–defendant is still a party in the case, there is little deci-

sional authority with respect to the plaintiff's introduction of the agreement. We find Judge Staton's dissenting opinion in *State v. Ingram*, (1980) Ind.App., 399 N.E.2d 808 (transfer pending) persuasive.

*Ingram's* principal issue was the proper presentation to the jury of the matters contained in a loan receipt agreement entered into between the plaintiffs, Ingram and Kirk, and Greenwood Shopping Center and Greenwood Realty Corp. In *Ingram*, the plaintiffs were injured when their car went off a driveway and into a ditch as they were attempting to leave Greenwood Shopping Center following a heavy rain. The State called the plaintiffs as adverse witnesses and elicited from them the monetary details of the loan receipt agreement. Counsel for the plaintiffs was them permitted by the trial court to introduce the entire agreement into evidence over the State's objection.

The concerns of Judge Garrard, who wrote the appellate court's opinion in which Judge Hoffman concurred, centered on the hearsay assertions and conclusions which would prejudice the non–agreeing defendant. Also, the court was concerned with the propriety of advising the jury of the loan amount as constituting either total or partial satisfaction of the plaintiffs' claims. Judge Garrard determined that the proper procedure for the court to follow in such circumstances is to withhold from the jury issues of partial satisfaction. Additionally, Judge Garrard determined that it was erroneous to admit the loan receipt agreement into evidence where it contained assertions and conclusions concerning the amount of damages sustained and the liability of the non–agreeing defendants. Therefore, the court of appeals determined that the trial court's admittance of the loan receipt agreement into evidence was error necessitating a new trial.

Judge Hoffman concurred in a separate opinion because of the hearsay assertions contained in the agreement. Judge Hoffman, however, further stated, "I would not find it reversible error if the loan agreement was allowed into evidence with the objectionable part removed." 399 N.E.2d at 812, (Hoffman, J. concurring).

In his dissent, 399 N.E.2d at 812–815, Judge Staton argued that after the it introduced the monetary sum into evidence it could not complain of the plaintiffs explaining the circumstances surrounding the agreement.

It was the State who introduced into evidence the monetary sum ($3,500) which Ingram and Kirk had received pursuant to the loan receipt agreement. Consequently, I would hold that the State cannot now complain of the admission of the loan receipt agreement, which Ingram and Kirk offered in *rebuttal* to the testimony regarding the payment they received under the agreement. [Original emphasis].

*State v. Ingram*, 399 N.E.2d at 812, (Staton, J. dissenting).

■ When evidence on a certain issue is introduced by one party, and it appears likely the other party will be prejudiced unless they are permitted to introduce contradictory or explanatory evidence, that evidence should be admitted. *Jackson v. Beard*, (1970) 146 Ind.App. 382, 255 N.E.2d 837; *see generally* 12 I.L.E. *Evidence* § 54 pg. 486 (1969). Although this determination is generally a discretionary function of the trial court, in a situation such as the one involved in this case, the failure of the trial court to allow a full explanation of the evidence admitted is tantamount to an abuse of discretion.

■ Here, the essence and operative features of the loan receipt agreement were made known to the jury, when counsel for Duke's, in his opening statement, referred to the $60,000 received by Erskine. Basic notions of equity and fairness dictate that the jury has a right to be informed as to the circumstances surrounding Erskine's receipt of the money. Without this opportunity, the jury is necessarily left with an incomplete impression of what transpired between the parties. Duke's cannot have the best of both worlds. It cannot have its motion in limine prohibiting the mentioning of the loan receipt agreement on the one hand, and yet introduce the amount Erskine received from Anderson Country Club and Myron Paugh on the other.

There is no longer any doubt as to the admissibility of the loan receipt agreement. *State v. Ingram, supra.* But, as we noted in *Burkett v. Crulo Trucking Co., supra,* the same ingenuity that conceived the loan receipt agreement is now being used to devise innumerable variations. We believe either the entire applicable portion of the loan receipt agreement is to be admitted into evidence,[3] or none is to be admitted. We will not allow counsel to introduce a mere portion, in this case the amount received, to the prejudice of the other party, without affording that party an opportunity to explain the circumstances surrounding the agreement. Using the rationale of Judge Staton's dissenting opinion in *State v. Ingram, supra,* we believe the trial court erred in not allowing testimony to be presented before the jury as to the circumstances surrounding the receipt of the $60,000 by Erskine.

Reversed and remanded for a new trial.

NEAL and RATLIFF, JJ., concur.

---

**3.** We share the concern of Judge Hoffman in *Ingram* regarding the admission of hearsay assertions and prejudicial conclusions, if any, which are contained in the loan receipt agreement. However, the simple device of editing such provisions would solve the problem.