Mary Ann GRAY, Adm. of the Estate of Austin Gray, et al., Plaintiffs-Appellants,

v.

DAVIS TIMBER AND VENEER CORP., et al., Defendants-Appellees.

No. 1–1079A275.

Court of Appeals of Indiana, First District.

April 29, 1982.

Rehearing Denied June 1, 1982.

---

Vernon J. Petri, John J. Fuhs, Petri & Fuhs, Spencer, William W. Hurst, Kevin P. Farrell, Eskenazi, Mitchell, Yosha & Hurst, Indianapolis, James R. Cotner, Cotner, Mann & Chapman, Bloomington, for plaintiffs-appellants.

Lewellyn H. Pratt, Applegate & Pratt, Bloomington, G. Daniel Kelley, Jr., Ice, Miller, Donadio & Ryan, Indianapolis, for defendants-appellees.

ROBERTSON, Judge.

Mary Ann Gray (Gray), Administratrix of the Estate of Austin Gray, appeals the jury verdict rendered in favor of the defendants in a wrongful death action. Austin Gray died when his automobile collided with two tractor-trailer trucks. One truck was owned by R & W Service System, Inc. (R & W) and driven by Terry Morrow (Morrow). The other truck was owned by Davis Timber & Veneer Co. (Davis Timber) and was driven by Sammy Davis.

We reverse and remand.

The central issue in this appeal involves the admission of a loan receipt agreement into evidence. Gray raises seven other issues regarding the instructions. The dispositive effect of our ruling on the loan receipt agreement precludes discussion of the instructions. A brief discussion of the facts, however, is necessary.

Austin Gray was traveling north on State Road 67 in Owen County. Morrow was operating a tractor-trailer for R & W and was ahead of Austin on State Road 67. Sammy Davis was also driving a tractor-trailer on this road. He was operating the truck for Davis Timber. Approximately one and a half miles outside of Gosport, Austin passed the Davis truck on a long decline. At approximately the same time, Morrow was decelerating in order to pull his vehicle off of the road to retrieve a sideboard he had lost. When Austin attempted to return his automobile to its proper lane, the R & W truck, driven by Morrow, had not gotten completely off the road and was partially blocking the lane. All three vehicles collided, resulting in Austin's death.

In her complaint, Gray alleged that R & W, through its employee Morrow, was negligent by failing to adequately warn or signal his intention to slow down his vehicle, that Morrow attempted to slow down his vehicle without ascertaining whether this action could be accomplished safely, that Morrow operated the vehicle at an unreasonable speed, and that Morrow failed to keep a lookout for vehicles. Similar allegations against Sammy Davis and Davis Timber were also asserted.

Prior to trial, a loan receipt agreement was executed between Gray and defendants Morrow, Davis Timber, and Sammy Davis.[1] At the time Sammy Davis entered the agreement, he was no longer employed by Davis Timber. During the course of Sammy Davis's testimony, the loan receipt agreement was admitted into evidence in its entirety including the amount of money Gray received. The parties also executed an addendum to the agreement which revealed that Sammy Davis had no financial interest in the outcome of the trial. In return for the loan, Gray entered a covenant not to execute with the defendants. Sammy Davis, Morrow, and the proprietors of Davis Timber, Robert Davis and Robert Pierce, were individually released.

On appeal, Gray challenges the trial court's admission of the loan receipt agreement on two grounds: 1) that it was improperly admitted to impeach Sammy Davis, and 2) that it was improper to allow the amount of money Gray received into evidence.

■ Indiana has clearly approved the use of a loan receipt agreement as an acceptable settlement device that serves a valid purpose. *See, State v. Ingram*, (1980) Ind. App., 399 N.E.2d 808; *Burkett v. Crulo Trucking Co.*, (1976) 171 Ind.App. 166, 355 N.E.2d 253. In *State v. Thompson*, (1979) Ind.App., 385 N.E.2d 198, we held that when a loan receipt agreement is executed between a plaintiff and a defendant, and that defendant or one of his agents or representatives appears and testifies for the plaintiff, the loan receipt agreement should be admissible to impeach his testimony because the witness has an obvious pecuniary bias.

Gray presented evidence that Sammy Davis did not loan her any money and would not receive any pecuniary benefit from the outcome of the trial. Sammy Davis, as well as Morrow and the owners of Davis Timber, were individually dismissed. Gray argues the trial court erred by admitting the loan receipt agreement because Sammy Davis had no pecuniary interest in the trial's outcome. Gray also contends that Sammy Davis was not an agent or representative of Davis Timber because he was no longer employed with the company.

■ We do not accept Gray's argument that the loan receipt agreement should not have been admitted into evidence, even though Sammy Davis would not receive any funds whatever the trial's outcome. Although all parties agree only Davis Timber's insurer would receive any repayment because it was the insurer who advanced the amount of the loan, we believe that Sammy Davis benefited from the loan receipt agreement because the agreement facilitated his dismissal from the action. The loan receipt agreement was relevant to Davis's credibility, and therefore, admissible into evidence for impeachment purposes.

■ We also do no accept the argument that Sammy Davis was not the agent or representative of Davis Timber because he was no longer employed by that company when he testified. R & W argues that if this argument were to be accepted, there is nothing to prevent a party to the loan receipt agreement from discharging an employee merely to prevent the admission of the loan receipt agreement into evidence.[2] It is not disputed that Sammy Davis was employed in a representative capacity when the accident occurred. His testimony not only related to his observations as an eyewitness, but also to his actions as an employee of Davis Timber. The proper focus, therefore, is whether Sammy Davis was the agent or representative of a defendant at the time of the accident and not at the time of his testimony. This focus not only prevents the discharge of an employee merely to facilitate trial strategy, but it insures fairness to a nonparticipating co-defendant by allowing him to show that the loan receipt agreement could affect the witness's credibility.

1. Sammy Davis is not related to the proprietors of Davis Timber.

2. This potential problem is complicated by the adherence to the employment at will doctrine in Indiana.

The trial court also admitted the amount of the loan receipt agreement into evidence despite Davis Timber's objections. In *City of Bloomington v. Holt*, (1977) 172 Ind.App. 650, 361 N.E.2d 1211, and *State v. Thompson, supra*, this court stated that it saw no reason why the amount of the agreement should be revealed to the jury. The danger which occurs is that if the settlement amount is small, the nonparticipating defendant will use it to downgrade the amount of damages. If the amount is large, the nonparticipating defendant will contend the plaintiff has been compensated. *State v. Ingram, supra.* Our supreme court has ruled that it is unjust to admit the agreement into evidence if the only purpose behind its admission is to reveal that the plaintiff has received compensation for his injury. *Health & Hospital Corp., Etc. v. Gaither*, (1979) Ind., 397 N.E.2d 589. In that case, Justice Hunter opined that such an admission is similar to informing the jury of the amount of a defendant's insurance liability coverage, which is not permissible in this state.

R & W argues that the holding in *Erskine v. Duke's GMC, Inc.*, (1980) Ind.App., 413 N.E.2d 305, is controlling. In *Erskine*, the defendant informed the jury of the amount of the loan receipt agreement in the opening argument. The trial court refused to allow the plaintiff to introduce the agreement into evidence. We ruled that it was error not to allow the plaintiff to introduce the agreement and held that either the entire applicable portion of the agreement is admissible or none of it is. Our ruling in *Erskine* does not mean that an irrelevant or highly prejudicial portion could not be properly deleted prior to its introduction. The rationale of *Erskine* was that it was unfair to allow the defendant to introduce the amount of compensation and to prohibit the plaintiff from discussing the terms of the agreement. In the present situation, R & W introduced the agreement and Gray objected to the prejudicial portion.

 We believe it was unfair to the plaintiff in the present situation to reveal the amount of the agreement. In *State v. Ingram, supra*, it was stated:

There is no way to gauge the impact of such matters upon the jury. They clearly represent an extraneous and potentially prejudicial circumstance; one which is, at best, unproductive towards securing a fair trial and just result on the merits.

We fail to see any reason why the trial court informed the jury of the amount of the agreement. The admission of this evidence unduly prejudiced Gray's claim.

The judgment is reversed and the cause remanded for further action not inconsistent with this opinion.

Reversed and remanded.

RATLIFF, P. J., and NEAL, J., concur.