STATE of Indiana, Appellant
(Defendant Below),

Greenwood Shopping Center, Inc. and
Greenwood Realty Corporation,
(Defendants Below),

Garden City Foods, Inc., (Third-Party
Defendant Below),

v.

Willie INGRAM and John Henry Kirk,
Appellees (Plaintiffs Below).

No. 1081S311.

Supreme Court of Indiana.

Oct. 30, 1981.

Linley E. Pearson, Atty. Gen., Robert S. Spear, Asst. Atty. Gen., Walter F. Lockhart, G. Richard Potter, Deputy Attys. Gen., Indianapolis, for appellant.

John J. Lorber, May, Oberfell, Helling, Lorber, Campiti & Konopa, South Bend, for appellees.

GIVAN, Chief Justice.

The appellee, Ingram, obtained a jury verdict of $10,000 against the State of Indiana. The appellee, Kirk, obtained a $3,000 judgment against the State of Indiana. Those judgments were appealed by the State. The Court of Appeals reversed the trial court and remanded the case for a new trial on the basis the admission of the entire loan receipt agreement was error. 399 N.E.2d 808. For reasons hereinafter set out, we vacate the opinion of the Court of Appeals and affirm the trial court.

The record discloses the following facts. Plaintiffs Ingram and Kirk were injured when the automobile Ingram was driving went into a ditch as they were leaving the Greenwood Shopping Center at South Bend. Water accumulated from heavy rainfall that day had obscured the edge of the roadway so that one could not tell where the road ended and where the ditch began. Testimony indicated this condition developed often in this area of the shopping center's parking lot. There was evidence that a clogged drainage pipe leading from the ditch to the other side of the road was a contributing factor in the flooding. Prior to trial, the parties stipulated the State of Indiana was responsible for maintaining adequate drainage through the ditch. The State had been notified of the problem but had apparently taken no action to alleviate the problem.

Appellees sued the State, Greenwood Realty Corporation, Greenwood Shopping Center, Inc., and Garden City Foods, Inc. in a personal injury action. The day before trial plaintiffs entered into a loan receipt agreement with all defendants other than the State. By terms of the agreement, the action was dismissed as to all but the State. Ingram and Kirk were to receive $3,500 from the dismissed defendants, and if a verdict of more than $6,000 was returned against the State of Indiana, there was to be repayment which was limited to $1,500 in any event.

The State responded with an amended answer adding that since plaintiffs had received full compensation for their injuries there should be no recovery. During the course of the trial, the State called Ingram and Kirk to the witness stand and asked them to explain their understanding of the terms of the agreement. In rebuttal, appellees placed the entire agreement in evidence. Some of the language of the agreement was couched in conclusory terms with regard to the negligence and liability of the State.

The State now claims the trial court erred in permitting the details of the loan receipt agreement to be admitted as evidence. The State claims the jury might well be misled into believing the conclusions stated in the agreement were the established facts in the case. The State contends the trial court should have admitted the agreement only after excising the harmful conclusory, self-serving, and prejudicial statements and misstatements of the law contained in the agreement.

■ The use of loan receipt agreements is permitted. *Health and Hospital Corporation of Marion County v. Gaither,* (1979) Ind., 397 N.E.2d 589; *American Transport Co. v. Central Indiana Ry. Co.,* (1970) 255 Ind. 319, 264 N.E.2d 64. At the same time it has been held the details of the agreement are admissible only when the agreeing co-defendant remains a party to the lawsuit and the details of the agreement are unknown to the nonagreeing co-defendant. *Health and Hospital Corp., supra.*

In the case at bar, the agreeing co-defendants were no longer parties to the suit. Thus, the agreement was inadmissible as evidence against the State. *Health and Hospital Corp., supra.*

■ However, in the case at bar, the State by its amended answer sought to establish the plaintiffs had been fully compensated and, therefore, had no action against the State. Having chosen this defense, the State was obliged to try to prove the agreement was a full satisfaction of plaintiffs' claims and thus, a general release of all tortfeasors. To this end the State put appellees Ingram and Kirk on the witness stand and questioned them as to their understanding of the terms and affect of the agreement. The State opened the door as to the content of the agreement. This placed the appellees in the position of offering the entire agreement as rebuttal to the State's position. It is well settled that otherwise inadmissible evidence may, in the discretion of the trial court, be admitted to explain or rebut prejudicial evidence which has been introduced by the opposing party. *Jackson v. Beard,* (1970) 146 Ind.App. 382, 255 N.E.2d 837; *Bandy v. Myers,* (1967) 141 Ind.App. 220, 227 N.E.2d 183; *Lyon v. Aetna Life Ins. Co.,* (1942) 112 Ind.App. 573, 44 N.E.2d 186. We hold the trial court did not err in permitting appellees to introduce the entire agreement in rebuttal to the State's presentation of a portion thereof.

■ If we assume, for the sake of argument, that it was improper for the trial court to admit those parts of the agreement containing conclusory and prejudicial statements concerning the State's negligence and its liability for the accident, there was ample independent evidence presented concerning the State's negligence. It was stipulated in pre-trial proceedings that the State owned the ditch and was responsible for maintaining adequate drainage through it. In answer to interrogatories, the State admitted it knew of the tendency of the ditch to accumulate water and conceal the presence of the ditch. The President of Greenwood Realty Corporation had made

several complaints to the State about the flooding problems. Erroneously admitted evidence that is merely cumulative in nature and thus contributed nothing to the jury's verdict is not reversible error. *Public Service Co. of Indiana v. Levenstein Realty Co.*, (1964) 246 Ind. 520, 207 N.E.2d 202; *Haskett v. Haskett*, (1975) 164 Ind.App. 105, 327 N.E.2d 612. We hold that, even if the trial court erred in not excising the alleged harmful parts of the agreement, such error was not reversible.

Since we are vacating the opinion of the Court of Appeals, we now consider those points raised by the appellant which were not covered by the opinion of the Court of Appeals. The State next claims the trial court erred in its refusal to give State's tendered instruction number 5, which reads:

"One who is injured is bound to exercise reasonable care and diligence to avoid loss or to minimize resulting damage. It is encumbant [sic] upon a person who is injured to use such means as are reasonable under the circumstances to avoid or to minimize the damage. If you find from a consideration of all the evidence that the using and fastening of seat belts would have avoided or minimized the resulting damage, then the person wronged cannot recover for any item of damage which could have been avoided, or minimized."

It is the State's contention that an instruction on the injured party's failure to minimize his injuries by buckling a seat belt is justified because there was evidence that showed wearing the seat belts would have reduced plaintiffs' injuries. The State claims the instruction was proper, as coming under the general doctrine, "Defendant may show in mitigation or reduction of damages any facts surrounding the injury complained of which tend to reduce the amount required for just compensation to the plaintiff." Citing 9 I.L.E., *Damages*, § 83, p. 248.

In *Kavanagh v. Butorac*, (1966) 140 Ind. App. 139, 221 N.E.2d 824, the defendant advanced the theory that the "avoidable consequences" doctrine applied to a seat belt defense. The court discussed the appli-

cability of the avoidable consequences doctrine to the seat belt defense and stated:

"Although the theory of avoidable consequences has merit, and failure to use the belts may come into action after the proximate cause, we have no authorities which we believe permit us to invoke that doctrine under the evidence here to avoid or lessen the damage. We recognize the possibility of the doctrine applying in some future date and in some matter where the circumstances are clearer than in the instant case in showing that some part of the injury would not have occurred except for the fact that plaintiff failed to avoid the consequence of the tort by not fastening his seat belt." *Id.* at 149, 221 N.E.2d at 830.

The State contends this case is being decided on the "future date" referred to by the Court of Appeals in *Kavanagh, supra*. The State claims the seat belt defense should be recognized to lessen a plaintiff's recovery due to his failure to mitigate damages by wearing a seat belt.

Professor Dobbs in Remedies, ch. 3, § 3.7, at 187 (1973) states: "The rule that denies the plaintiff a recovery for harm he might have reasonably avoided is usually referred to as the avoidable consequences rule . . . . [T]he avoidable consequences defense *looks to his post-tort conduct*." Professor Prosser on Torts, ch. 11, § 65, at 423 (4th ed. 1971) observes: "The rule of avoidable consequences comes into play *after a legal wrong has occurred*, but while some damages may still be averted, and bars recovery for such damages." In the Restatement (Second) of Torts § 918 (1971) we find: "Avoidable consequences. (1) Except as stated in Subsection (2), one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure *after commission of the tort*." In 22 Am. Jur.2d *Damages* § 31, at 52–53, we find: "[T]he avoidable consequences generally arise *after the wrongful act of the defendant*." (All emphasis supplied.) Further in the last named source, at § 201, p. 281, we find that in consideration of mitigation or

damages, where the question is whether the injured party could have avoided all or part of the consequences of the tort, the avoidable consequences doctrine is involved. Thus, whether the State characterizes the instruction as one that relates to "mitigation of damages" or "avoidable consequences" makes no difference in the analysis.

By whatever name, the doctrine cannot logically encompass the so-called "seat belt defense." The act of buckling or not buckling a seat belt is an act the injured party must perform before the injury causing the act occurs. By the authorities cited above, the question of whether mitigation of damages has occurred looks to the acts of the injured party only after the injury has occurred.

■ Our courts have consistently held to the traditional view that in questions of mitigation the post-tort conduct of the injured party is examined. *See, Hinchcliffe et al. v. Koontz,* (1890) 121 Ind. 422, 23 N.E. 271; *Suelzer v. Carpenter,* (1915) 183 Ind. 23, 107 N.E.2d 467; *Salem Community School Corp. v. Richman,* (1980) Ind.App., 406 N.E.2d 269. We, therefore, hold the seat belt defense may not be used to limit a plaintiff's recovery on the theory the plaintiff failed to take steps to mitigate his damages following the tort. We do not feel bound by the dicta in *Kavanagh,* to the extent that such a concept might be followed at some "future date." We hold the trial court did not err in refusing to give the seat belt defense instruction tendered by the State.

We also note the Indiana Legislature has addressed the matter of automobile seat belts in only three code sections, I.C. 9–8–7–1 through I.C. 9–8–7–3 [Burns 1979]. These statutes do not deal with the duty of automobile riders to wear seat belts but rather only with the automobile retailers' obligation to sell automobiles equipped with seat belts. Absent a clear mandate from the legislature to require Indiana automobile riders to wear seat belts, we are not prepared to step into the breach and judicially mandate such conduct.

The State next claims the trial court erred in refusing to give State's tendered instruction number 8, which reads:

"The defendant, State of Indiana, asserts that the negligence of Greenwood Shopping Center, Greenwood Realty Corporation, Garden City Foods, Inc., and Sam Mirikin were [sic] the sole proximate cause of the accident and injuries complained of by Willie Ingram and John Henry Kirk. If you find from a preponderance of the evidence that the accident and injuries of which the plaintiffs complain were caused by the negligence of the Greenwood Shopping Center, Greenwood Realty Corporation, Garden City Foods, Inc., and Sam Mirikin (or any of them) and not by the negligence of the defendant, State of Indiana, then your verdict must be for the defendant, State of Indiana."

■ In this brief, the State does not tell us where in the record the evidence which would support this instruction may be found. Our own search of the record reveals practically no evidence that would support giving this instruction. It is well established that an instruction must be applicable to the evidence in a record. *Dahlberg v. Ogle,* (1978) 268 Ind. 30, 373 N.E.2d 159; *Baker v. Mason,* (1968) 253 Ind. 348, 242 N.E.2d 513. We hold the refusal to give this instruction, where there was virtually no evidence in the record to support it, was proper.

■ We also note this tendered instruction was a mandatory instruction. A mandatory instruction must set out all of the elements for recovery. If an essential element is omitted, the instruction is erroneous and cannot be cured by other instructions. *Davison v. Williams,* (1968) 251 Ind. 448, 242 N.E.2d 101.

■ The State next claims the trial court erred in refusing to give State's tendered instruction number 4:

"If you find that the accumulation of water existing on the parking lot of the Greenwood Shopping Center and the ditch adjacent thereto was the result of

an obstruction of said drainage ditch and you further find that the obstruction was not brought about by any positive act of the State of Indiana, then you must find that the accumulation of water was merely a circumstance of the injuries of which plaintiffs complain and not a proximate cause thereof."

In *Wilcox v. Urschel,* (1935) 101 Ind.App. 627, 631, 200 N.E. 465, 466–467, the court stated:

"Where an injury is to some extent due to two distinctive causes, unrelated in operation, and one of them is a prior, passive, or remote cause, which does no more than furnish a condition or give rise to the occasion by which the injury was made possible, and the other cause is an active, direct, independent, effective and intervening cause, the law is well settled, that courts will, as a general rule, look only to the latter as the proximate cause and will disregard the former or remote cause. It has been many times recognized by the courts of this state that an intervening responsible agent may cut off the line of causation from the original negligence."

*See also, Kelley v. Skeen,* (1968) 143 Ind. App. 387, 240 N.E.2d 837; *Schroer v. Funk and Sons, Inc., et al.,* (1968) 142 Ind.App. 223, 233 N.E.2d 680; *Kelly v. Davidson, et al.,* (1958) 129 Ind.App. 384, 154 N.E.2d 888. The State argues this act of negligence, if any, only served to create a condition by which plaintiffs were injured. The intervening act of plaintiff Ingram, was one of contributory negligence that was the proximate cause of his and Kirk's injuries and should bar any recovery. The State contends its instruction is a correct statement of the law as pronounced in the cases cited.

The cases cited envision a negligent act of a party that has the potential of being a proximate cause of injury. However, that negligence is cut off by an intervening negligent act of another, either the act of a third party or the contributory negligence of the injured party. The second negligent act thus becomes the proximate cause of the injury. The tendered instruction makes no mention of the necessity of the intervening act of another which turns the potentially injurious prior act into a mere condition or circumstance of the injury. Among the considerations to be made in determining whether refusal to give an instruction is error, is whether it correctly states the law. *Dahlberg, supra.* State's tendered instruction number 4 does not conform to that requirement as it is an incomplete statement of the aforementioned principle. The refusal to give State's instruction 4 was not error.

■ The State claims the trial court erred in giving instruction number 5, which appellees had tendered. The instruction reads:

"If a person breaches a duty to maintain proper drainage, he is not excused from liability merely because an unprecedented or unusual rainfall caused the flooding if the drainage situation was such that an occurrence of that nature might have been anticipated by the exercise of reasonable care and foresight."

The rule of law on this subject was stated in *Central Indiana Ry. Co. v. Mikesell,* (1966) 139 Ind.App. 478, 221 N.E.2d 192. In that case the court stated:

"The general rule . . . is that if the rainfall or flood was of such a nature that, in view of all the facts, the exercise of reasonable skill and foresight should have led to its being anticipated there may be liability. If it was of such a nature that it could not have been expected to occur, proper care, diligence, and foresight being exercised, there is no liability." *Id.* at 492, 221 N.E.2d at 200.

Persons responsible for maintaining adequate drainage are not required to provide for absolutely every possibility of rainfall. The party responsible for drainage is not excused from liability if the flooding condition could have been reasonably anticipated with the exercise of reasonable care and foresight. This is true even if the rainfall is abnormally heavy. Instruction number 5, given by the trial judge, correctly states

this proposition of law. Instruction was, therefore, properly given.

The trial court is in all things affirmed.

All Justices concur.