**Lonnie R. MANNS, Appellant (Plaintiff Below),**

v.

**STATE of Indiana DEPARTMENT OF HIGHWAYS, Appellee (Defendant Below).**

No. 50S03–8907–CV–576.

Supreme Court of Indiana.

Aug. 1, 1989.

Peter Obremskey, Carol Sparks, Parr, Richey, Obremskey & Morton, Lebanon, Ted A. Waggoner, Peterson & Waggoner, Rochester, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, William Eric Brodt, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Today we revisit and reconsider the trial procedures relating to the evidentiary use of partial settlement agreements.

The lawsuit filed by the plaintiff-appellant, Lonnie R. Manns, alleged that he sustained severe injuries on June 1, 1984, when his vehicle, operating on a preferential state highway, collided with a vehicle operated by Everett Hintz, who failed to yield the right-of-way after stopping at a stop sign. The action also claimed that the defendant-appellee, State of Indiana Department of Highways (Department), negligently designed the intersection. Before the commencement of trial, Manns executed a covenant not to sue Hintz in exchange for $125,000 and dismissed Hintz.

The plaintiff called Hintz as a witness at trial. On cross-examination, the Department was permitted over objection to inform the jury of the settlement agreement as follows:

Q I'm sorry, at one time you were a defendant in the lawsuit filed by Lonnie Manns, is that correct?

A Yeah, that's right I guess.

Q And you entered into a settlement agreement with Mr. Manns, didn't you?

A Just what do you mean in that? Oh, yeah.

Q Okay, and you agreed to—uh—pay Mr. Manns $125,000, is that correct?

A Yes.

Q Okay, and as a result of that agreement that you entered into with Mr. Manns, you were dismissed from the lawsuit, is that correct?

A Yeah, that's the way I read it.

However, the trial court refused to permit plaintiff's counsel on redirect examination to place the covenant not to sue in evidence. In the ensuing trial, the jury returned a verdict for the Department. On appeal, Manns contends that the trial court erred in permitting the Department to advise the jury of the existence of the settlement agreement and the amount received, and that the trial court compounded the error by refusing to allow introduction of the agreement in evidence.

Primarily because of its application of *State v. Ingram* (1981), Ind., 427 N.E.2d 444, as controlling precedent, the Court of Appeals affirmed the trial court. *Manns v. State Department of Highways* (1988), Ind.App., 524 N.E.2d 334. In so doing, however, it noted:

It well may be that a better course would be to insulate the jury from the effects and reasons for settlement with one or more, but less than all the defendants, at least where that information does not bear directly on the bias or prejudice of some witness at the trial. If the purpose of admitting the evidence is to reach the question of an intended satisfaction, then, as in other issues of contract interpretation, that question could be resolved as a matter of law by the court from the language of the document. If the issue is *pro tanto* payment or full compensation in fact, that

could be resolved by the court crediting amounts paid against the verdict without the various risks to the parties that the jury will misuse the information.

*Id.* at 336. Similarly, the Court of Appeals also observed:

The decisions also recite that the actual payment constitutes a *pro tanto* satisfaction of the claim. This, of course, is true but submitting that question to the jury would appear to provide no benefit to a just determination of the case except as the payment may constitute full satisfaction. The court can easily credit partial payments against the amount found due without any of the prejudicial risks involved in bringing the payment before the jury. Since we forbid interrogatories to the jury, how they use the information of a partial payment necessarily remains a matter for speculation.

*Id.* at 335, n. 1.

In seeking transfer, Manns argues that the Court of Appeals misconstrued *Ingram* or, in the alternative, that the subject should be re-evaluated. We now grant transfer to reconsider and clarify the proper trial procedure regarding settlement agreements.

In *Ingram,* all but one defendant entered into a loan receipt agreement with the plaintiffs in which the plaintiffs received $3,500 and promised to repay $1,500 if the verdict against the remaining defendant exceeded $6,000. The settling defendants were thereafter dismissed from the case. In asserting its defense of full compensation, the remaining defendant called the plaintiffs as witnesses and asked them to explain their understanding of the agreement. During rebuttal, the plaintiffs placed the entire loan receipt agreement in evidence. At trial and on appeal, the defendant contended that the admission of the loan receipt agreement was error in that prejudicial statements regarding the defendant's negligence and liability were not excised. *Ingram,* 427 N.E.2d at 446.

The issues in *Ingram* did not include the initial admissibility of the existence or amount of the loan receipt agreement. Rather, we resolved only two issues related to its admissibility: 1) it was not error to permit the plaintiffs' introduction of the entire agreement in rebuttal because the defendant had "opened the door as to the content of the agreement"; and 2) assuming *arguendo* that certain unexcised parts of the agreement may have been erroneously admitted, reversible error did not result because such parts were "merely cumulative in nature and thus contributed nothing to the jury's verdict." *Id.* at 447. Our holding in *Ingram* did not rule that the amount or existence of a settlement agreement was necessarily admissible.

■ The judicial policy of this State strongly favors the use of partial settlement agreements.

"[C]ovenants not to sue, covenants not to execute and loan receipt agreements are legal and are to be encouraged in the settlement of litigation."

*City of Bloomington v. Holt* (1977), 172 Ind.App. 650, 655, 361 N.E.2d 1211, 1215 (quoting *Scott v. Krueger* (1972), 151 Ind. App. 479, 515, 280 N.E.2d 336, 357). *Accord American Transport Co. v. Central Indiana Ry. Co.* (1970), 255 Ind. 319, 264 N.E.2d 64 (loan receipt agreement).

■ However, controversy often arises regarding the use of such settlement agreements at the trial of a plaintiff's remaining unresolved claims against a nonsettling defendant. When a jury is unnecessarily informed of a prior partial settlement, a plaintiff is likely to suffer unfair prejudice. As noted by Judge Hoffman in *Gray v. Davis Timber and Veneer Corp.* (1982), Ind.App., 434 N.E.2d 146, 149:

The danger which occurs is that if the settlement amount is small, the nonparticipating defendant will use it to downgrade the amount of damages. If the amount is large, the nonparticipating defendant will contend the plaintiff has been compensated.

In addition, jurors may misconstrue such partial settlement as evidence of the plaintiff's belief that the settling defendant is the truly culpable or responsible party. The admission of a settlement agreement is unjust where the only purpose behind put-

ting it in evidence is to reveal that a plaintiff has already received compensation. *Health and Hosp. Corp. v. Gaither* (1979), 272 Ind. 251, 258, 397 N.E.2d 589, 594. We likewise observe the potential for unfair prejudice to a defendant if a jury is shown language in a settlement document "poisoned" with irrelevant, evocative language calculated to inflame prejudice.

■ The admission of prior partial-settlement evidence rarely provides probative and relevant evidence and generally injects extraneous, irrelevant, and confusing circumstances and issues which are likely to impair a jury in its fair and impartial ascertainment of truth. Such negative evidentiary considerations, however, are significantly outweighed by the sound judicial policy favoring the use of partial settlement agreements as tools for prompt and amicable dispute resolution. In order to encourage the use of such settlements, we conclude that the risks and hazards of their unfair use at trial should be minimized.

■ In the present case the Department urges that "whether or not the consideration given for a covenant not to sue is full or partial compensation" constitutes a question of fact for jury determination, and cites numerous supporting authorities grounded in *Bedwell v. DeBolt* (1943), 221 Ind. 600, 50 N.E.2d 875. In *Bedwell*, this Court stated:

It is well settled that all joint tort-feasors liable for an injury are discharged by the unqualified release of one. The amount of the consideration paid for such a release is immaterial so long as it is sufficient to support a contract and the transaction is not tainted by fraud or mistake. Likewise, full satisfaction of such a claim for damages by one of the tort-feasors operates to discharge all, though no release is executed. On the other hand, it is equally well settled that a covenant not to sue one tort-feasor does not bar an action against the others, but only operates as a satisfaction of the damages, *pro tanto*, as to the benefits received. But if the consideration paid for a covenant not to sue is full compensation for the injury, the liability is discharged as to all, regardless of the character of the instrument. And it may be added that under an answer of full satisfaction by a joint tort-feasor a defendant is entitled to a *pro tanto* credit for anything less than full payment which the plaintiff has received from that source. Whether the payment was in full or partial is for the jury to determine from the evidence. This is consistent with the rule that an answer of payment will authorize proof of a credit.

221 Ind. at 609, 50 N.E.2d at 878–79. Even if evidence of settlement agreements is not before the jury, the trial court must still "consider the nature of the agreements and credit funds received against a judgment." *Sanders v. Cole Municipal Finance* (1986), Ind.App., 489 N.E.2d 117, 123. Payments made in partial satisfaction of a claim must be credited against the remaining liability to prevent a double recovery. *Barker v. Cole* (1979), Ind.App., 396 N.E.2d 964. However, in contrast to settlement proceeds from covenants not to sue or execute, funds advanced pursuant to loan receipt agreements do not constitute partial payments nor satisfactions of judgment. *American Transport*, 255 Ind. 319, 264 N.E.2d 64. At least to the extent actually repayable from a judgment, loan receipt proceeds should not be subject to *pro tanto* credit against such judgment. *Duke's GMC, Inc. v. Erksine* (1983), Ind.App., 447 N.E.2d 1118 (appeal following remand by *Erskine v. Duke's GMC, Inc.* (1980), Ind. App., 413 N.E.2d 305).

■ However, we question the necessity for jury fact-finding in resolving the issue raised by the defense of satisfaction. In the absence of a general release, whether funds received in a partial settlement agreement constitute a partial or total satisfaction is determined by simply applying the amount received against the amount of the verdict rendered. *Sanders*, 489 N.E.2d 117; *Scott*, 151 Ind.App. 479, 280 N.E.2d 336. We perceive no legitimate value in requiring a jury to perform such a ministerial task. It does not require any discretionary assessment of evidence weight or witness credibility to determine which of two amounts is larger or to perform a

subtraction computation. This is a function more appropriately performed by the trial judge after the verdict is returned and before judgment is entered. Such procedure is consistent with sound judicial economy by simplifying jury instructions and deliberations and minimizing the possibility of jury confusion and misunderstanding, but without impairing a jury's proper role as finder of fact.

■ We therefore determine that upon an asserted affirmative defense of full or partial satisfaction or payment in a personal injury case, the existence and amount of such settlement, if not disputed by the plaintiff, should generally *not* be presented to the jury. Rather, the trial court should make a *pro tanto* adjustment of the amount of any damages determined by the jury verdict, subtracting any consideration received under a covenant not to sue or a covenant not to execute, and enter final judgment accordingly. If the consideration exceeds the damages found by the jury, the defense of full satisfaction or payment would thus be shown as a matter of law, and the entry of judgment for such defendant would be appropriate.

■ As alternate support for allowing the settlement and amount in evidence, the Court of Appeals cited Ind.Code § 34–4–36–2[1] as indicating legislative approval for presentation of collateral source payments to the jury. We disagree. As recognized in *Barker*, 396 N.E.2d 964, 970, "[a] joint tortfeasor, however, is *not* a collateral source." Furthermore, the legislative intent in preventing double recovery is not served by admission of such settlement evidence because the partial settlement proceeds operate to offset a verdict *pro tanto* or, in the case of loan receipt

agreements, are subject to repayment from a judgment awarding damages. Such proceeds therefore cannot constitute a double recovery and thus are not in the nature of the collateral source payments that are the subject of the statute.

■ In contrast to the inadmissibility of covenants not to sue and covenants not to execute, evidence regarding loan receipt agreements are properly admissible on the issue of the lender's credibility.

> [W]hen a loan receipt agreement is executed between a plaintiff and a defendant, and that defendant, or one of his agents or representatives, appears at trial and testifies for the plaintiff, the loan receipt agreement should be admissible to impeach his testimony. That such a witness would have a pecuniary bias is obvious, for if he testifies persuasively in plaintiff's favor, he will be more likely to recover his loan to the plaintiff.

*State v. Thompson* (1979), 179 Ind.App. 227, 245, 385 N.E.2d 198, 210.

■ We recognize that situations may occur in which a defendant may seek to impeach a witness by arguing that a prior settlement facilitated his lack of involvement in the action. Under our decision today, such ground is insufficient to justify admission of the settlement with its attendant potential for confusion and unfair prejudice. *Contra Davis Timber and Veneer Corp.*, 434 N.E.2d 146. However, if loan receipt evidence is offered for impeachment purposes, the mere fact that any repayment will accrue to a witness's liability insurer or employer should not insulate him from such impeachment. *Id.*

In those instances where limited information regarding a partial settlement agree-

---

1. Ind.Code § 34–4–36–2 provides:

In a personal injury or wrongful death action the court shall allow the admission into evidence of:

(1) proof of collateral source payments, other than:

(A) payments of life insurance or other death benefits;

(B) insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly; or

(C) payments made by the state or the United States, or any agency, instrumentality, or

subdivision thereof, that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought;

(2) proof of the amount of money that the plaintiff is required to repay, including workers' compensation benefits, as a result of the collateral benefits received; and

(3) proof of the cost to the plaintiff or to members of the plaintiff's family of collateral benefits received by the plaintiff or the plaintiff's family.

ment comes into evidence, persistent difficulty arises in determining whether a party thereby aggrieved may respond with further details to minimize the jury misconceptions expected to result. Contrasting judicial concerns have been expressed by Indiana courts.

> [T]he loan receipt agreement may be drafted with admissions and accusations so damning to the non-participating co-defendant that the co-defendant is placed in a dilemma. He must choose to suffer in silence damaging conduct at trial by the co-defendant participating in the agreement, or he must choose to explain that conduct to the trier of fact by offering into evidence the agreement with its statements calculated to frame the offering party in the worst possible light.

*Burkett v. Crulo Trucking Co.* (1976), 171 Ind.App. 166, 178–79, 355 N.E.2d 253, 260–61, *quoted with approval in Dias v. Daisy–Heddon* (1979), 180 Ind.App. 657, 667–68, 390 N.E.2d 222, 228, which also stated:

> To say that self-serving statements contained within a legal document such as a loan receipt agreement are admissible would be to invite and encourage parties to include them, resulting in a perversion of the law.

*Dias,* 180 Ind.App. at 669, 390 N.E.2d at 229.

A contrasting approach is found in the first *Erskine* case:

> When evidence on a certain issue is introduced by one party, and it appears likely the other party will be prejudiced unless they are permitted to introduce contradictory or explanatory evidence, that evidence should be admitted.
>
> * * * * * *
>
> Basic notions of equity and fairness dictate that the jury has a right to be informed as to the circumstances surrounding [plaintiff's] receipt of the money. Without this opportunity, the jury is necessarily left with an incomplete impression of what transpired between the parties. [Defendant] cannot have the best of both worlds.

413 N.E.2d at 308.

> We will not allow counsel to introduce a mere portion, in this case the amount received, to the prejudice of the other party, without affording that party an opportunity to explain the circumstances surrounding the agreement.

*Id.* at 309.

 This controversy was largely resolved with our decision in *Ingram,* wherein this Court, speaking through Chief Justice Givan, stated:

> The [defendant] opened the door as to the content of the agreement. This placed the [plaintiffs] in the position of offering the entire agreement as rebuttal to the [defendant's] position. It is well settled that otherwise inadmissible evidence may, in the discretion of the trial court, be admitted to explain or rebut prejudicial evidence which has been introduced by the opposing party. [citations omitted] We hold the trial court did not err in permitting [plaintiffs] to introduce the entire agreement in rebuttal to the [defendant's] presentation of a portion thereof.

427 N.E.2d at 446. Where the fact and amount of a settlement agreement are made known to a jury, fairness dictates that the opposing party be permitted to respond to the risk of improper prejudice by introducing evidence explaining the motivating intent and circumstances of such agreement, including the document itself. We recognize that application of this "opened door" rationale to supercede hearsay and other objections may, in certain cases, risk confronting a jury with evidence even more confusing, extraneous, and unfairly prejudicial than that resulting from their knowledge of the existence and amount of a settlement. When this problem occurs, the trial judge has the discretionary authority to redact such an exhibit by excising inflammatory, evocative language irrelevant to a fair explanation of the motivating intent and circumstances of the settlement agreement.

 The defendant's answer in the present case asserted the affirmative defense of satisfaction by alleging that the consideration received by the plaintiff pur-

**936**

suant to a covenant not to sue constituted full compensation. In the trial court's pretrial order, the plaintiff conceded the existence and contents of the covenant not to sue. At trial, the ruling permitting testimony about the existence and amount of the settlement was in conformity with the then-existing precedent of *Bedwell* and its progeny. While today we depart from this aspect of *Bedwell* and find that the issue should generally be adjudicated by excluding such evidence from the jury and by a post-verdict *pro tanto* adjustment by the trial judge at the time of entry of judgment, we decline to make retroactive application to find reversible error in the present case. Absent strong and compelling reasons, prospective application of laws, rules and regulations is the normal construction to be given. *State ex rel. Uzelac v. Lake Criminal Court* (1965), 247 Ind. 87, 212 N.E.2d 21.

As to the plaintiff's claim of trial court error in excluding the document from the jury, the Department opened the door to its receipt in evidence. *Ingram*, 427 N.E.2d 444. The six-page agreement contains references to various factors that relate to the plaintiff's motivation and intent in entering the settlement. Among these are the anticipated delay in the event of a trial and appeal, the lack of funds to finance investigation and prosecution of claims, the immediate availability of funds received by settlement, an explanation that the amount of settlement includes full payment of the Hintz $100,000 liability insurance coverage limits plus $25,000 additional from Mr. and Mrs. Hintz, and the plaintiff's belief that the settlement represents only a "very, very small portion and percentage of the true value of an amount or sum of money representing the full, adequate and reasonable payment and compensation" for injuries and damages sustained as a result of the accident. Such information was relevant to explain the intent and circumstances of the settlement, issues injected by the Department with its introduction of evidence regarding the existence and amount of the prior settlement. The trial court erred in refusing to admit in evidence the covenant not to sue.

Where evidence is erroneously excluded, reversal is justified only if the error relates to a material matter or is of such character as to substantially affect the rights of the parties. *Terre Haute First Nat'l Bank v. Stewart* (1983), Ind.App., 455 N.E.2d 362; *Posey County v. Chamness* (1982), Ind.App., 438 N.E.2d 1041. In addition, an error in the exclusion is harmless when the record discloses that excluded evidence was otherwise presented to the jury. *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73; *Ingram*, 427 N.E.2d 444. To the extent that the excluded covenant not to sue contained information explaining that the limits of Hintz's liability insurance were exhausted in the settlement, such information was separately received in evidence through the subsequent testimony of Hintz. As we view the remainder of the erroneously excluded contents of the covenant not to sue in the totality of the issues and other evidence upon which the jury returned a general verdict for the defendant, we do not find that the error in excluding the document relates to a material matter nor was its effect on the plaintiff's rights substantial in this case.

The opinion of the Court of Appeals is vacated, and the judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.