**Kevin G. KOCHER, Appellant–Defendant,**

**v.**

**Alva Lynne GETZ, Appellee–Plaintiff.**

No. 35A02–0206–CV–436.

Court of Appeals of Indiana.

April 29, 2003.

Josef Musser, Kyle C. Persinger, Spitzer Herriman Stephenson Holderead Musser & Conner, Marion, IN, Attorneys for Appellant.

Mark C. Guenin, Guenin Law Office, Wabash, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kevin G. Kocher appeals from a judgment, following a jury trial, entered in favor of Alva Lynn Getz on her negligence claim. Kocher presents the following dispositive issue for review: whether the trial court abused its discretion when it refused two of Kocher's tendered jury instructions regarding comparative fault law.

We reverse and remand for a new trial.

### FACTS AND PROCEDURAL HISTORY

In March 1996 in Huntington County, Kocher was driving his vehicle west on Division Road, and Getz was driving her vehicle south on State Road 9. When Kocher failed to yield the right-of-way to Getz, the vehicles collided. In February 1998, Getz filed her Complaint for Damages against Kocher, alleging that she had suffered certain injuries and losses and incurred medical expenses as a result of the collision. In March 1998, Kocher filed his Answer and Request for Jury Trial, and raised, in part, the following affirmative defenses: (1) Getz's losses and injuries' were proximately caused by her comparative fault, and (2) Getz failed to mitigate her damages.

The parties appeared for a three-day jury trial in April 2002. In its preliminary instructions, the trial court stated in relevant part:

Defendant Kocher admits that he failed to yield the right-of-way to Getz[;] however, Getz has the burden to prove her damages by a preponderance of the evidence.

The Defendant, Kevin G. Kocher, denies that this motor vehicle accident caused significant injury or damages to Getz or, if injuries were caused to Getz, such injuries and the resulting damages were minor and temporary. Any continuing complaints of the Plaintiff are the result of conditions of Getz that preexisted this accident. Kevin G. Kocher has no burden to disprove the claims of Getz, as I have already [stated]. It is the Plaintiff, Alva Lynne Getz, who has the burden to prove her claims.

However, Kevin G. Kocher has claimed certain Defenses and has the burden of proving these defenses by a preponderance of the evidence. These defenses are that Alva Getz failed to mitigate her damages.

During trial, Getz explained that she sought medical assistance the day following the accident because she was experiencing neck pain. Getz sought care from her family doctor, a neurosurgeon, a chiropractor, and an orthopedic surgeon for her chronic pain. Her claimed medical expenses totaled approximately $10,000. In addition to medical expenses, Getz asserted a claim for lost wages. Of the total lost wages claimed, which amounted to approximately $25,000, Getz claimed that she had lost $13,200 from a part-time job that she had started after the accident but quit before trial.

Kocher admitted that he was at fault for having caused the accident. But Kocher presented testimony from an orthopedic surgeon, who concluded that Getz suffered from a degenerative cervical condition that pre-existed the accident. In addition, he argued that she failed to mitigate her damages because she admitted that she had started her part-time job after the accident and had made no effort to replace the alleged $13,200 in lost income after she quit.

At the close of the evidence, both parties tendered proposed final jury instructions to the court. The trial court refused the following comparative fault instructions tendered by Kocher:

### Instruction No. 2

You must assess the fault on a percentage basis between the Plaintiff and the Defendant. The percentage of fault assessed to each party will allow you to decide whether the Plaintiff is entitled to recover damages, and if so, the amount of damages.

You will therefore decide the comparative fault issues as follows:

—*First*, you must decide the percentage of fault, if any, for the Plaintiff and the Defendant in the proximate cause of the Plaintiff's injuries and damages. These percentages *must* total 100%.

—*Next*, if you decide the Plaintiff's fault is *greater than 50%*, then you *must* return your verdict for the Defendant; and no further deliberation is required.

—*However*, if you find that the Plaintiff's fault is 50% or less, then you must decide the total amount of damages the Plaintiff is entitled to recover, if any, without regard to fault.

—*Then*, you must multiply the Plaintiff's total damages by the Defendant's percentage of fault and return your ver-

dict for the Plaintiff and against the Defendant in the amount of the product of that multiplication.

The verdict forms provided to you by the Court will help guide you through this process.

### Instruction No. 6

You should attribute fault as follows:

Percentage of fault attributable to
    Defendant Kevin G. Kocher    ___%
Percentage of fault attributable to
    Plaintiff Alva Lynn Getz    ___%
                     = 100%

If you found that the Plaintiff's fault, if any, was more than fifty percent (50%) of the total fault involved in the incident that proximately caused the Plaintiff's injuries, you are to find that the Defendant is not liable to the Plaintiff. You should proceed to Verdict Form "B" which should be dated and signed by the jury foreperson.

However, if you found that the Plaintiff's fault, if any, was fifty percent (50%) or less than the total fault involved in the accident that proximately caused the Plaintiff's injuries, then you must decide the total amount of damages the Plaintiff is entitled to recover, if any, without regard to fault.

Then, you must multiply the Plaintiff's total damages by the Defendant's percentage of fault and return your verdict for the Plaintiff and against the Defendant in the amount of the product or result of that multiplication.

You should then proceed to Verdict Form A and enter the amount of your verdict for the Plaintiff and against the Defendant in the amount of the product or result of the multiplication of the total amount of damages the Plaintiff is entitled to recover, multiplied by the Defendant's percentage of fault.

However, the trial court accepted some of Kocher's tendered instructions, one of which pertained to his mitigation defense and provided:

### ·Final Instruction No. 9

The plaintiff has the burden of proving the following propositions by a preponderance of the evidence:

1. That the defendant's negligence was a proximate cause of the Plaintiff's injuries and damages.

2. The amount of Plaintiff's damages.

As I have stated, the Plaintiff must prove these propositions; the Defendant has no burden of disproving them.

However, the Defendant has claimed certain specific defenses, and the Defendant does have the burden of proving those defenses by a preponderance of the evidence. The Defendant claims:

1. The Plaintiff was at fault for failing to mitigate her damages;

2. That the Plaintiff's failure to mitigate her damages should reduce or preclude the Plaintiff's recovery of damages.

The court also gave Final Instruction No. 13, which Kocher tendered, and which provided that "[p]ersons claiming injury as a result of wrongs of others must use reasonable care ... to mitigate the damages resulting from a wrong, and not to enhance such damages."

The jury returned its verdict in favor of Getz and awarded her $250,000 in damages. The verdict form did not require the jury to apportion fault between the parties. Rather, it provided, "We, the jury, find for the plaintiff and against the defendant and assess the Plaintiff's damages in the sum of Two Hundred Fifty Thousand Dollars ($250,000)." This appeal ensued.

## DISCUSSION AND DECISION

Kocher asserts that because he asserted the affirmative defense that Getz failed to mitigate her damages, the court abused its discretion when it refused his tendered Instruction Nos. 2 and 6. In particular, he contends that those instructions are correct statements of comparative fault law, are not duplicative of other instructions, and are necessary to instruct the jury how to apply his mitigation defense within the framework of Indiana's Comparative Fault Act.

■ We review a trial court's refusal to tender a requested instruction for an abuse of discretion. *City of Terre Haute v. Simpson*, 746 N.E.2d 359, 367 (Ind.Ct. App.2001), *trans. denied*. In determining whether the court erred in refusing a tendered instruction, we consider whether: (1) the instruction correctly states the law; (2) there is evidence in the record supporting the instruction; and (3) the substance of the instruction is covered by other instructions. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 944 (Ind.2001). In addition, a court's refusal to give an instruction does not amount to reversible error unless there is a reasonable probability that the substantial rights of the complaining party have been adversely affected. *Id.; Sullivan v. Fairmont Homes, Inc.*, 543 N.E.2d 1130, 1140 (Ind.Ct.App. 1989), *trans. denied*.

### A. Evidence of Getz's Failure to Mitigate Damages

Getz concedes that Kocher's tendered Instruction Nos. 2 and 6 are correct statements of comparative fault law. Thus, we first address whether there is evidence in the record supporting those instructions. *See Elmer Buchta Trucking*, 744 N.E.2d at 944. Kocher asserts that because the court instructed the jury regarding his mitigation defense, it follows that there

was evidence to support his tendered instructions regarding comparative fault. We must agree.

The trial court gave two instructions specifically addressing Kocher's mitigation defense, Final Instruction Nos. 9 and 13. In particular, the court instructed the jury that Kocher claimed the following defenses: (1) Getz was at fault for failing to mitigate her damages; and (2) Getz's failure to mitigate her damages should reduce or preclude her recovery of damages. The court also provided the jury with a general explanation of a person's duty to mitigate her damages. Getz did not object to Final Instruction Nos. 9 and 13, and she concedes on appeal that those instructions were proper. Thus, it follows that there was evidence supporting the instructions regarding Getz's failure to mitigate damages.

Having determined that the evidence supported instructions regarding Kocher's mitigation of damages defense, the next issue is whether the evidence regarding Getz's failure to mitigate damages also warrants the giving of Kocher's tendered comparative fault instructions.

The Comparative Fault Act, Indiana Code Section 34–51–2–1, applies generally to damages actions based in fault that accrued on or after January 1, 1985. The primary objective of the Act was to modify the common law rule of contributory negligence under which a plaintiff was barred from recovery where he was only slightly negligent. *The Act seeks to achieve this result through proportional allocation of fault, ensuring that each person whose fault contributed to cause injury bears his or her proportional share of the total fault contributing to the injury.* 

*Mendenhall v. Skinner and Broadbent Co., Inc.*, 728 N.E.2d 140, 142 (Ind.2000) (footnote and citations omitted) (emphasis added). For purposes of the Act, "fault" is defined as: (1) any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others; (2) unreasonable assumption of risk not constituting an enforceable express consent; (3) incurred risk; and (4) unreasonable failure to avoid an injury or to mitigate damages. Ind.Code § 34–6–2–45(b). As this court has expressly noted, "[t]he General Assembly has decided that under our comparative fault system, 'fault' includes a failure to mitigate damages." *Medlock v. Blackwell,* 724 N.E.2d 1135, 1138 (Ind.Ct.App.2000). Thus, "the failure to mitigate damages relates directly to allocation of fault." *Id.* at 1137.

In addition, Indiana's Comparative Fault Act specifically addresses jury instructions as follows:

(a) This section applies to an action based on fault that is:

(1) brought against one (1) defendant ....; and

(2) tried to a jury.

(b) The court, unless all the parties agree otherwise, *shall instruct the jury to determine its verdict in the following manner:*

(1) The jury shall determine the percentage of fault of the claimant, of the defendant, and of any person who is a nonparty.... In assessing percentage of fault, the jury shall consider the fault of all persons who caused or contributed to cause the alleged injury.... The percentage of fault of parties to the action may total less than one hundred percent (100%) if the jury finds that fault contributing to cause the claimant's loss has also come from a nonparty or nonparties.

(2) If the percentage of fault of the claimant is greater than fifty percent

(50%) of the total fault involved in the incident which caused the claimant's death, injury, or property damage, the jury shall return a verdict for the defendant and no further deliberation of the jury is required.

(3) If the percentage of fault of the claimant is not greater than fifty percent (50%) of the total fault, the jury then shall determine the total amount of damages the claimant would be entitled to recover if contributory fault were disregarded.

(4) The jury next shall multiply the percentage of fault of the defendant by the amount of damages determined under subdivision (3) and shall then enter a verdict for the claimant in the amount of the product of that multiplication.

Indiana Code Section 34–51–2–7 (emphasis added).

Here, Getz's action is an action based on "fault." And under the Comparative Fault Act, the failure to mitigate damages relates directly to the allocation of fault. *See Medlock,* 724 N.E.2d at 1137. Final Instruction Nos. 9 and 13 establish that Kocher alleges Getz was at fault because of her failure to mitigate, and tendered Instruction Nos. 2 and 6 explain how Kocher's mitigation defense relates to the allocation of fault. Therefore, if the evidence supported the giving of Final Instruction Nos. 9 and 13, the evidence also supported Kocher's tendered Instruction Nos. 2 and 6.

Nevertheless, Getz asserts that Kocher's tendered instructions regarding comparative fault were not warranted because Kocher admitted that he caused the accident. In support of her argument, Getz directs us to *Deible v. Poole,* 691 N.E.2d

1313 (Ind.Ct.App.1998), *opinion adopted,*702 N.E.2d 1076 (Ind.1998). In *Deible,* 691 N.E.2d at 1314, the defendant, who was not wearing his glasses as required by his driver's license, struck the plaintiff's vehicle from behind. The plaintiff sued, and at trial, the defendant admitted liability and that the plaintiff was entitled to damages. *Id.* Despite the defendant's admission that he was completely liable and that the plaintiff was entitled to recover damages, the jury allocated 100% fault to the plaintiff, no fault to the defendant, and found for the defendant and against the plaintiff. *Id.*

The plaintiff filed a motion to correct error, seeking judgment notwithstanding the verdict or a new trial. *Id.* at 1315. The trial court denied the motion and reasoned that, even though it was unreasonable for the jury to have found plaintiff 100% at fault, the evidence supported a finding that she was at least 50% at fault as a result of her failure to mitigate. The plaintiff then appealed. *Id.*

On appeal, this court concluded that, because the defendant had admitted both liability and that the plaintiff should recover damages, "the jury and the trial court appear[ed] to have believed that [the defendant's] mitigation defense was a defense to the issue of liability." *Id.* at 1316. We held, under those facts, that the failure to mitigate damages is a defense to the amount of damages the plaintiff was entitled to recover, not a defense to the ultimate issue of liability. *Id.* at 1138. As a result, we reversed the trial court and remanded for a new trial on the issue of damages only. Subsequently in a per curiam opinion, our supreme court expressly adopted the majority opinion in *Deible* pursuant to former Indiana Appellate Rule 11(B)(3).[1] *Deible,* 702 N.E.2d at 1076.

---

**1.** *See* App. Rule 58(A)(1) (effective Jan. 1, 2001) (stating that when Court grants trans-

fer, the Court of Appeals' opinion is vacated

Contrary to Getz's assertion, *Deible* is inapposite. First, *Deible* has no bearing on the issue presented in this case, namely, whether the trial court should have instructed the jury on Indiana's comparative fault scheme. Second, we question the analysis in *Deible* regarding the mitigation of damages defense under comparative fault law. *See* Ind.App. Rule 65(A) (authorizing publication of court of appeals opinions that criticize existing law). Specifically, we disagree with *Deible* to the extent it suggests that where, as here, a defendant admits liability for an accident and raises a mitigation of damages defense, the jury should only consider the mitigation of damages defense in awarding damages, not when allocating fault between the parties. *See Deible,* 691 N.E.2d at 1316 (holding mitigation of damages is defense to amount of damages plaintiff is entitled to recover *after* defendant is found to have caused tort).

As the court in *Deible* acknowledged, and as we have noted above, our legislature has defined "fault" for purposes of comparative fault to include, not only a plaintiff's contributory negligence or assumption of risk, but also a plaintiff's "unreasonable failure to avoid an injury or to mitigate damages." I.C. § 34-6-2-45(b). The Uniform Comparative Fault Act's definition of "fault" also includes a party's failure to mitigate, and the official comment to that section refers to that phrase as an express reference to "the doctrine of avoidable consequences." UNIF. COMPARATIVE FAULT ACT § 1, cmt., 12 U.L.A. 128 (1977). Under the avoidable consequences doctrine, "a party cannot recover damages flowing from consequences which that party could reasonably have avoided." 22 AM. JUR. 2d, *Damages* § 495, at 579 (1988). As our supreme court explained in a pre-Comparative Fault Act case:

except for those opinions expressly adopted

The rule that denies the plaintiff a recovery for harm he might have reasonably avoided is usually referred to as the avoidable consequences rule.... [T]he avoidable consequences defense looks to his post-tort conduct. *The rule of avoidable consequences comes into play after a legal wrong has occurred, but while some damages may still be averted, and bars recovery for such damages.*

*State v. Ingram,* 427 N.E.2d 444, 447 (Ind. 1981) (emphasis added) (citations omitted). Additionally, the Restatement (Second) of Torts § 918 (1977), provides, "one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort." Comment b of § 918 further explains:

[A] person who fails to avert the consequences of a tort, which he could do with slight effort is entitled to no damages for the consequences. If harm results because of his careless failure to make substantial efforts or incur expense, the damages for the harm suffered are reduced to the value of the efforts he should have made or the amount of expense he should have incurred, in addition to any harm previously caused.

Finally, the doctrine of avoidable consequences is distinct from contributory negligence in that contributory negligence is negligence of the plaintiff before any damage, or any invasion of his rights, has occurred, and, as we have stated, the doctrine of avoidable consequences comes into play *after* a legal wrong has occurred. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 65, at 458 (5th ed.1984).

■ But our Comparative Fault Act does not make any temporal distinction

by the Supreme Court).

between a plaintiff's own negligence and his failure to mitigate damages. Rather, under the comparative fault scheme, a "[p]laintiff's negligence is defined by the applicable standard for a defendant's negligence. Special ameliorative doctrines for defining plaintiff's negligence are abolished." RESTATEMENT (THIRD) OF TORTS, § 3 (2000). "No rule about mitigation of damages or avoidable consequences categorically forgives a plaintiff of this type of conduct or categorically excludes recovery." *Id.*, cmt. b (citing RESTATEMENT (SECOND) OF TORTS § 918). Thus, by defining "fault" to include both a plaintiff's negligence and his unreasonable failure to mitigate damages, the jury in comparative fault cases considers a plaintiff's conduct *both* before and after the tort when allocating fault. More importantly, the Act's definition of "fault" makes it possible for a jury to return a verdict for the defendant by finding that the plaintiff's failure to avoid the consequences of the tort was so substantial that the damages should be reduced to nothing. *See* RESTATEMENT (SECOND) OF TORTS, § 918, cmt. b (stating person who fails to avert consequences of tort, which he could do with slight effort, is entitled to no damages for consequences).

■ In *Deible,* however, the court did not address the relationship between mitigation of damages and allocation of fault under the Act. The *Deible* opinion incorrectly suggests that when a defendant admits liability for an accident and concedes that the plaintiff is entitled to some amount of damages, then the jury is precluded from finding that the plaintiff's failure to mitigate is so substantial that, despite defendant's admissions, she is entitled to no recovery. Granted, it is a rare occurrence when a jury returns a verdict like that in *Deible,* but as the trial court in that case concluded, the evidence of plaintiff's failure to mitigate supported

a finding that Deible was at least 50% at fault. In calculating total fault between the parties, if the jury found that Deible was greater than 50% at fault, then it was required to return a verdict in favor of the defendant. *See* I.C. § 34-51-2-7. Thus, unlike the court in *Deible,* 691 N.E.2d at 1316, we are not convinced that the jury in that case "misunderstood its task." Instead, that verdict merely reflects the concepts discussed in § 918 of the Restatement (Second) of Torts. And because § 918, particularly comment b, clarifies the unique relationship between the mitigation of damages defense and allocation of fault under comparative fault law, we expressly adopt that section of the Restatement (Second) of Torts. Thus, where a defendant admits liability but raises a mitigation of damages defense, it may be reasonable under certain circumstances for the jury to find that the plaintiff's failure to avoid the consequences was so substantial that the damages *could* be reduced to nothing.

■ This court has expressed concern about our legislature's decision to include a plaintiff's failure to mitigate damages as a consideration in fault allocation. *See Medlock,* 724 N.E.2d at 1138 (stating that better policy would be to treat mitigation as a damages issue rather than a fault allocation issue, but nevertheless noting that outcome remains same). Perhaps our concern stems from the tendency in the law to use the terms "fault" and "liability" interchangeably. In fact, the court in *Deible* uses those terms as synonyms. While it may be reasonable in everyday parlance to refer to "liability" as "fault" and "fault" as "liability," it is inappropriate to use those terms interchangeably where the legislature has provided a specific, unambiguous definition of "fault" for purposes of comparative fault law. *See* I.C. § 34-6-2-45.

Indeed, a plain reading of that unambiguous definition illustrates that "fault" includes more than mere liability. Stated differently, "fault" encompasses more than one party admitting that he or she caused an accident. Rather, despite the dissent's suggestions to the contrary, "fault" includes a variety of actions by both the plaintiff and the defendant or defendants—actions that occur both before and after the accident.[2] Granted, where a defendant has conceded *liability* for an accident but raises a mitigation of damages defense, a jury might be confused by the use of the term "fault" to describe a plaintiff's failure to mitigate damages. But as this court noted in *Medlock*, 724 N.E.2d at 1138, our legislature has "rejected" what the courts may view as the better approach, namely, treating mitigation of damages as a damages issue separate from fault allocation. The statute is clear, and the definition of fault includes not only a party's negligent conduct, but also a party's failure to mitigate damages. *See* I.C. § 34-6-2-45(b). We are bound by that definition. *See Koppin v. Strode*, 761 N.E.2d 455, 461 (Ind.Ct.App.2002) ("When construing a statute, the legislature's definition of a word binds us."), *trans. denied.*[3]

In sum, where, as here, the defendant alleges that the plaintiff failed to mitigate damages, and the evidence supports the giving of jury instructions regarding the mitigation defense, it is proper for the jury to receive further instruction on how that defense relates to the allocation of fault.[4] Getz's reliance on *Deible* is misplaced, and we conclude that the evidence supports Kocher's tendered Instruction Nos. 2 and 6.

### B. Other Instructions

Kocher also asserts that the substance of tendered Instruction Nos. 2 and 6 was not covered by other instructions given. We agree. Our review of the preliminary and final instructions show that the court did not instruct the jury on the manner in which it was to allocate fault or calculate damages based on fault. Thus, Kocher's

---

**2.** The dissent argues that when the legislature paired the phrase "mitigate damages" with "unreasonable failure to avoid an injury," it intended to limit the definition of "fault" only to acts that occur before an accident or injury. We reject this interpretation on two grounds. First, the phrase "mitigate damages" is not ambiguous or subject to conflicting meanings and, thus, it is not our role to interpret it. *See State v. D.M.Z.*, 674 N.E.2d 585, 588 (Ind.Ct.App.1996) (stating only when statute is ambiguous is it susceptible to judicial interpretation), *trans. denied.* Additionally, "[o]ur courts have consistently held to the traditional view that in questions of mitigation the *post-tort* conduct of the injured party is examined." *Ingram*, 427 N.E.2d at 448 (emphasis added). Thus, we disagree with the dissent's conclusion that the definition of fault includes "a temporal limitation on when a plaintiff's act or omission can be considered fault."

**3.** It is important to note that the inclusion of mitigation of damages in fault allocation does not relieve a defendant of his evidentiary burden. Rather, just as where a defendant bears the burden of proving that a plaintiff's own actions contributed to the accident, the defendant also bears the burden of proving a plaintiff's failure to mitigate damages after the accident. *See Childress v. Buckler*, 779 N.E.2d 546, 552–53 (Ind.Ct.App.2002) (referring to "affirmative defense of comparative fault" as including not only plaintiff's negligence but also failure to mitigate damages, and stating defendant has burden of proving mitigation defense where defendant admitted liability for accident). The legislature's inclusion of mitigation of damages in fault allocation does not change a defendant's responsibility to raise mitigation of damages as an affirmative defense and prove that defense by a preponderance of the evidence.

**4.** We note that neither party submitted an instruction containing the Act's definition of "fault."

tendered Instruction Nos. 2 and 6 were not duplicative of other instructions.

### C. Substantial Rights

■■■ Kocher has demonstrated that his tendered Instruction Nos. 2 and 6 were a correct statement of comparative fault law, were supported by the evidence at trial, and were not duplicative of other instructions. Therefore, Kocher has established that the trial court abused its discretion when it refused his tendered instructions. *See Elmer Buchta Trucking,* 744 N.E.2d at 944. However, before a court's refusal to give an instruction amounts to reversible error, there must be a reasonable probability that the substantial rights of the complaining party have been adversely affected. *Id.*

As we have already indicated, the trial court gave no instructions in this case that explained to the jury the overall comparative fault scheme, and we find this problematic for several reasons. First, there is no dispute that Getz's complaint is governed by the Comparative Fault Act. And as we have mentioned, under the Act, unless the parties agree otherwise, the trial court *shall* instruct the jury to determine its verdict in accordance with Indiana Code Section 34–51–2–7. When the court in this case refused Kocher's tendered Instruction Nos. 2 and 6, there were no other instructions that properly instructed the jury to allocate fault and calculate damages based on fault as required by that statute.

Moreover, the absence of any instruction regarding the comparative fault scheme rendered meaningless Kocher's defense that Getz failed to mitigate damages. Specifically, the court instructed the jury that Kocher raised a mitigation of damages defense and that Kocher had the burden to prove that defense by a preponderance of the evidence. The court further instructed the jury that, as a result of her failure to mitigate, Kocher argued that Getz was at fault. Nevertheless, without tendered Instruction Nos. 2 and 6, the jury was not instructed how to allocate fault between the parties or how fault should be reflected in the damages award. Thus, even though the court instructed the jury that Kocher had raised a mitigation defense, the court failed to explain how to apply that defense within the framework of comparative fault law. Under these circumstances, not only was the jury wholly unaware that it should allocate fault, but it also had no instruction on its ability to allocate fault to Getz based on her alleged failure to mitigate damages. As such, after reviewing the instructions as a whole, we must conclude that there is a reasonable probability that the omission of Kocher's tendered Instruction Nos. 2 and 6 adversely affected Kocher's substantial rights.

### CONCLUSION

The trial court abused its discretion when it refused Kocher's tendered instructions, both of which explained how to allocate fault and calculate damages under Indiana's Comparative Fault Act. Kocher's tendered instructions were correct statements of comparative fault law, supported by the evidence, and not duplicative of other jury instructions given. In addition, Kocher has demonstrated a reasonable probability that his substantial rights were adversely affected because, without his tendered instructions, the jury was unable to discern how to apply his mitigation defense. We conclude that the court committed reversible error when instructing the jury and, therefore, remand for a new trial.

Reversed and remanded for a new trial.

DARDEN, J., concurs.

VAIDIK, J., dissents with separate opinion.

VAIDIK, Judge, dissenting.

I respectfully disagree with the majority's holding that a party's failure to mitigate damages after an accident can be used to allocate fault between the parties. Indiana Code § 34–6–2–45 provides:

> "Fault", for purposes of [the Indiana Comparative Fault Act], includes any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages.

Under the language contained in the statute, I would hold that only a party's acts or omissions before the accident constitute the type of mitigation of damages that can be used by a trier of fact to allocate fault.

In reaching this conclusion, I follow the holding reached by another panel of this Court in *Deible v. Poole*, which was adopted by the Indiana Supreme Court. In *Deible*, this Court held "that mitigation of damages is a defense to the amount of damages a plaintiff is entitled to recover after the defendant has been found to have caused the tort. Mitigation of damages is not a defense to the ultimate issue of liability." *Deible v. Poole*, 691 N.E.2d 1313, 1316 (Ind.Ct.App.1998), *adopted on transfer*, 702 N.E.2d 1076 (Ind.1998). Therefore under *Deible*, "fault" is limited to only those acts or omissions committed by parties and nonparties that contribute to the accident or the initial injury. *See Deible*, 691 N.E.2d at 1316. "Fault" would include a person's unreasonable failure to avoid an injury or to mitigate damages after the fault of another but before the conclusion of the accident. However, once the accident is concluded, any additional acts or omissions on the part of the injured party go to the amount of damages the

injured party should recover, not the ultimate issue of liability. *See id.* "Otherwise stated, if the act of the injured party does not operate in causing the injury from which all damages ensued, but merely adds to the resulting damages, its only effect is to prevent the recovery of those damages which reasonable care would have prevented." *Id.* (quoting 22 AM. JUR.2D Damages § 492 (1988)). Not only do I find that we are bound by the decision adopted by our supreme court, I believe that the *Deible* decision is fully consistent with the language and intent of the Indiana Comparative Fault Act.

In defining "fault," the Indiana General Assembly inserted the phrase "mitigate damages" in the clause that reads "unreasonable failure to avoid an injury or to mitigate damages." Ind.Code § 34–6–2–45. By pairing the phrases "mitigate damages" with "avoid injury" in the same clause, the General Assembly provided that "fault" only includes an injured party's unreasonable failure to take actions leading up to an accident that would mitigate the extent of the party's initial injury or avoid the injury all together. Thus, as our supreme court found in adopting *Deible*, the Indiana Comparative Fault Act does contain a temporal limitation on when a plaintiff's act or omission can be considered fault.

I recognize that there are two definitions of "mitigate damages." The first definition of mitigation deals exclusively with acts or omissions that occur *before* an accident or initial injury. An example of this type of mitigation is a plaintiff's failure to attempt to slow down her car to avert an accident after observing a defendant run a stop sign. A plaintiff's failure to mitigate damages under the first definition goes to the issue of ultimate liability and fault. The second definition of mitigation encompasses acts or omissions that

occur *after* an accident or initial injury. A plaintiff who fails to seek adequate medical treatment or continues to seek unwarranted medical treatment after the accident takes place is an example of this type of mitigation. A plaintiff's failure to mitigate damages under the second definition only goes to the amount of damages the plaintiff should receive. In drafting the Indiana Comparative Fault Act, I believe that the intent of the General Assembly was to define "fault" using the first definition of mitigation, that is, an injured party's acts or omissions before an accident that fail to minimize the party's initial injury.

The majority's holding turns on its head case law both before and after the enactment of the Indiana Comparative Fault Act regarding the effect of a plaintiff failing to mitigate her damages. Under the majority's holding, mitigation of damages always becomes a fault issue. Therefore, under the majority's theory, if the plaintiff's failure to mitigate damages constitutes over fifty percent of the total damages, regardless of whether that failure caused the initial injury or merely exacerbated it, then the plaintiff would not recover any award. Ind.Code § 34–51–2–6. Consider the example where a defendant rear-ends a plaintiff and is 100% liable for the accident. If the plaintiff has $100,000 in damages but the defendant proves that fifty-one percent of those damages resulted from the plaintiff not returning to work after the accident, then under the majority's interpretation, the plaintiff would be entitled to zero damages, not $49,000. This was not the intent of the legislature.

In this case, Kocher repeatedly admitted that he was entirely responsible for the accident and that the only issue before the jury was damages. Tr. p. 34–35, 111, 124–125, 274. Kocher's mitigation defense was that Getz failed to mitigate her damages by taking a part-time job after the accident and making no effort to replace her lost income after she then quit that job. Appellant's Br. p. 3, 6. This is not the type of "mitigate damages" referred to in the definition of "fault" found in Indiana Code § 34–6–2–45. Kocher's mitigation of damages defense went to Getz's acts or omissions after the accident was sustained; and therefore, it only went to the amount of damages that Getz could recover, not the ultimate issue of fault. Because fault was not an issue in this case, I find that the trial court acted within its discretion in refusing to give Kocher's instructions on comparative fault; and therefore, I respectfully dissent.